Revised 03/06 WDNY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

### FORM TO BE USED IN FILING A COMPLAINT 15   C V 1000
### UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
(Prisoner Complaint Form)

All material filed in this Court is now available via the **INTERNET**. See Pro Se Privacy Notice for further information.

*[Stamp: UNITED STATES DISTRICT COURT FILED NOV 17 2015 MICHAEL J. ROEMER, CLERK WESTERN DISTRICT OF NY]*

## 1. CAPTION OF ACTION

**A.      Full Name And Prisoner Number of Plaintiff:** NOTE: *If more than one plaintiff ... s in forma pauperis status, each plaintiff must submit an in forma pauperis application and a signed Authorization or the only plaintiff to be considered will be the plaintiff who filed an application and Authorization.*

1.    Randolph Scott 15-B-2127

2. _____

-VS-

**B.      Full Name(s) of Defendant(s)** NOTE: *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant. If you have more than six defendants, you may continue this section on another sheet of paper if you indicate below that you have done so.*

1.    Timothy B. Howard, Sheriff          4. _____
2.    County of Erie as"person"          5. _____
3. _____          6. _____

## 2. STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION** NOTE: *To list additional plaintiffs, use this format on another sheet of paper.*

Name and Prisoner Number of Plaintiff: Randolph Scott 15-B-2127

Present Place of Confinement & Address: Wyoming Correctional Facility, P.O. Box 501, Attica, New York 14011-0501

Name and Prisoner Number of Plaintiff: _____

Present Place of Confinement & Address: _____

**DEFENDANT'S INFORMATION** NOTE: *To provide information about more defendants than there is room for here, use this format on another sheet of paper.*

Name of Defendant: Timothy B. Howard, Sheriff

(If applicable) Official Position of Defendant: Sheriff of Erie County

(If applicable) Defendant is Sued in ___X___ Individual and/or _X_____ Official Capacity

Address of Defendant: Erie County Holding Center, 40 Delaware Ave., Buffalo, New York 14202

Name of Defendant: County of Erie as "person"

(If applicable) Official Position of Defendant: County of Erie as "person"

(If applicable) Defendant is Sued in ___X___ Individual and/or _X_ Official Capacity

Address of Defendant: County Attorney: Michael A. Siragusa, 95 Franklin Street, Buffalo, New York 14202, (716) 858-2200; Fax (716) 858-2281

Name of Defendant: _____

(If applicable) Official Position of Defendant: _____

(If applicable) Defendant is Sued in _____ Individual and/or _____ Official Capacity

Address of Defendant: _____

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.   Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action?**
Yes_____ No_X__

If Yes, complete the next section. NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.   Name(s) of the parties to this other lawsuit:

Plaintiff(s): _____

Defendant(s): _____

2.   Court (if federal court, name the district; if state court, name the county): _____

3.   Docket or Index Number: _____

4.   Name of Judge to whom case was assigned: _____

2

5.    The approximate date the action was filed:_____

6.    What was the disposition of the case?

        Is it still pending?  Yes_____  No_____

            If not, give the approximate date it was resolved._____

        Disposition (check the statements which apply):

        _____ Disposed (check the box which indicates why it was dismissed):

            _____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

            _____ By court for failure to exhaust administrative remedies;

            _____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

            _____ By court due to your voluntary withdrawal of claim;

        _____ Judgment upon motion or after trial entered for

            _____ plaintiff

            _____ defendant.

**B.**    Have you begun **any other lawsuits in federal court** which **relate to your imprisonment?**

        Yes_____    No X____

If Yes, complete the next section.  NOTE: *If you have brought more than one other lawsuit dealing with your imprisonment, use this same format to describe the other action(s) on another sheet of paper.*

1.    Name(s) of the parties to this other lawsuit:

        Plaintiff(s):_____

        _____

        Defendant(s):_____

        _____

2.    District Court:_____

3.    Docket Number:_____

4.    Name of District or Magistrate Judge to whom case was assigned:_____

    _____

5.    The approximate date the action was filed:_____

6.    What was the disposition of the case?

        Is it still pending?  Yes_____  No_____

            If not, give the approximate date it was resolved._____

3

Disposition (check the statements which apply):

_____ Dismissed (check the box which indicates why it was dismissed):

     _____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

     _____ By court for failure to exhaust administrative remedies;

     _____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

     _____ By court due to your voluntary.withdrawal of claim;

_____ Judgment upon motion or after trial entered for

     _____ plaintiff

     _____ defendant.

---

## 5. STATEMENT OF CLAIM

For your information, the following is a list of some of the most frequently raised grounds for relief in proceedings under 42 U.S.C. § 1983. (This list does not include all possible claims.)

| | | |
|---|---|---|
| • Religion | • Access to the Courts | • Search & Seizure |
| • Free Speech | • False Arrest | • Malicious Prosecution |
| • Due Process | • Excessive Force | • Denial of Medical Treatment |
| • Equal Protection | • Failure to Protect | • Right to Counsel |

**Please note that** it is not enough to just list the ground(s) for your action. You **must** include a statement of the facts which you believe support each of your claims. In other words, tell the story of what happened to you but do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995). **Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

---

### Exhaustion of Administrative Remedies

Note that according to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison er confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

You must provide information about the extent of your efforts to grieve, appeal, or otherwise exhaust your administrative remedies, and you must attach copies of any decisions or other documents which indicate that you have exhausted your remedies for each claim you assert in this action.

(1).

**A. FIRST CLAIM:** on (date of the incident) <u>April 8 to July 13,</u>
<u>2015.</u>

**Defendant** (give the name and position held of each defendant
involved in the incident) <u>Timothy B. Howard, Sheriff and, County</u>
<u>of Erie as "person".</u>

<u>**Did the following to me:**</u> Plaintiff as a pre-trial detainee was
deliberately and intentionally denied as per jail's policies/
rule(s) of Erie County Jail Facilities a total of ninety-seven
(97) day(s) or fourteen (14) week(s) of religious worship/
exercise services of plaintiff's faith and choice "Islam" as
black muslim faith inmate. **2.)** Plaintiff also denied as per
jail's policy/rule ninety (90) day(s) or thirteen (13) week(s)
of private Islamic religious worship/exercise services as a
keeplock inmate. **3.)** Plaintiff also denied as per jail's policy/
rule ninety (90) day(s) or thirteen (13) week(s) of: **Consultation**
with muslim Imam chaplain as a keeplock inmate and, **4.)** Plaintiff
denied as per jail's policy/rule ninety (90) day(s) or thirteen
(13) week(s) of **Islamic Religious Text(s)** as a keeplock inmate
at Erie County Jail Facilities <u>and, as afforded to other faith religion(s).</u>
   <u>Claim: Denied Islamic Religious Worship/Exercise Services particpation.</u>

   <u>**\*\*\*See pg. # 6 for Exhaustion of Administrative Remedies**</u>

<u>Additional Factual Part of Claim</u>
**1.)** Considering Erie County Jail Administration would not
recognize, acknowledge or <u>did not have the religious "sect"</u>
<u>of: Black Muslim under: Nation of Islam</u> period within <u>either of</u>
defendant(s) facilities nor, would jail administration
acknowledge plaintiff as such...
   Thus, as an **option** rendered by plaintiff to chief
administrative officer that plaintiff be permitted one on one
private or congregational worship/exercise services of: Sunni
Muslim being that that "sect" of muslim is also taught from
the <u>**"Koran" as black muslim teachings and ,still as a right**</u>
<u>of plaintiff...See plaintiff's grievance filed attached hereto</u>.

(2).

**2.)** There was absolutely no restrictions placed on plaintiff's religious worship/exercise service particpation at anytime by chief administrative officer as to e.g. (private service, etc. etc.) as a disciplinary keeplock inmate. Plaintiff's disciplinary keeplock status was totally un-related to religion or surrounding religion.

**3.)** There was absolutely at no time of: opinions, judgements or decision making from a religious authority advisor or from a muslim Imam chaplain of plaintiff's faith nor, from a muslim chaplain of Sunni Muslim "sect" nor, from a chaplain period of another faith concerning plaintiff's religious beliefs, faith nor, of plaintiff's particpation to worship/exercise plaintiff's religious beliefs privately or congregational  as being muslim nor, was there a muslim chaplain or a chaplain period of another faith to confer or consult on or with plaintiff towards plaintiff's religious concerns and issues at either Erie County Jail Facilities from **April 8, 2015 to July 13, 2015.** Nor, did defendant(s) **fully** recognize or acknowledge Sunni Muslim faith "sect" under the **"koran"** teachings at Erie County Correctional Facility. **Note: Muslim Imam Chaplain and koran both are required for certain prayers and, dedication recitals during both "Jumuah" worship/exercise services and, with "Ramadan" fast and feast ceremonial celebration recital towards perfection to "Allah".**

Please see attached: **Affidavit in Support of Claim # 1;** Please see attached: **Affidavit in Support of "Bogus"** and **"Entrapment"** jail's Policy/Rule under: Religion pg. 15 of Inmate Handbook of Defendant's, Revised April 2015; See also attached: **Sworn Affidavit of Muslim Inmates/Witnesses with County Institutional Number(s) of: No Muslim Imam Chaplain as per Jail's Policy/Rule under: Religion** at Erie County Correctional Facility in a year or better to conduct religious worship/exercise services. See also attached: **Exhibit(s) of: a; b; c; d and e** of Jail's Inmate Handbook of: Policies/Rules of Defendant(s), Revised April 2015. And also see attached: **Memorandum of Law to Support Cause of Action/Claim.**

(3).

See attached exhibit of: Title 9 "Management of County Jails,"
Part 7024. re: Religion, Section(s) 7024.1 and 7024.9 (a); (b)
and (d), four (4) exhibit(s) of. Also see attached: Memorandum of
Law.

### Plaintiff Further Alleges Against Defendant(s)

1.) Defendant(s) has a practice of not enforcing the policies/
rule(s) of: Religion governing Islamic religious worship/exercise
and, defendant(s) acted and, failed to act     in deliberate
disregard of plaintiff's fundamental right(s) of freedom of
religion to exercise/worship as matter of choice and faith of
the plaintiff's and, as plaintiff being a pre-trial detainee
keeplock inmate. Pursuant to: 1V Keeplock Status Policy/Rule
in specific # 6 and # 8 of Inmate Handbook pg. 31, revised April
2015, defendant(s) deliberately disregarded plaintiff's
fundamental right(s) and also, in violation of defendant's policy
under: Religion pg. 15 of inmate handbook, Revised April 2015.
2.) Defendant(s) unconstitutional tortious practices re: Religion
of Islamic worship/exercise was brought to the attention of:
Chief Administrative( Officer/Supervisor Official(s) by
plaintiff. Proof by inmate request slip(s) documentation along
with grievance filed...

3.) Defendant(s) unconstutional tortious practices re: Religion
"Islam" has been adopted through-out the jail's administration
for some time...and, prior to plaintiff's March 31, 2015 arrest.
See attached: SSworn affidavit of muslim inmate(s) with county
instutional number(s) statement of: No Muslim Imam Chaplain
in a year or better at Erie County Correctional Facility to
conduct Muslim worship/exercise services.

4.) County Employees were un-trained by virtue of County Policy
and, condoned usage theories...Erie County Holding Center/Erie
County Correctional Facility for year(s) has had a history of

unconstutional tortious conduct usage under defendant, **Timothy B. Howard, Sheriff. There are presently a number of tort claim(s) before the Court(s) against that entity of similarity...**

5.) Employees **past** and present(act(s) of tortious conduct(s) pursuant to usgae of the County, depriving fundamental right(s) of the plaintiff's.

6.) Defendant(s) had promulgated adequte policies and procedures re: Religious Islamic worship/exercise within inmate handbook, revised April 2015 of defendant((s) that would had protected fundamental right(s) of plaintiff but, Chief Administrative Officer/Supervisory Official(s) failed to adhered by written policy which, forfeited plaintiff's fundamental right(s) re: **Religious Islamic/Exercise** for a period of ninety-seven (97) day(s) or fourteen (14) week(s) deprivation of a fundamental right as a pre-trial detainee keeplock inmate...

7.) Defendant(s) unconstitutional tortious act(s) done in violation pursuance of State Law regulation(s) of: **Title 9 Part 7024. re: Religion, section(s) a; b; c and d thereof.**

8.) **Inadequate** funding to secure Imam Chaplain to conduct worship/ exercise of Islamic faith as other faith religion(s) afforded... presented unconstitutional violation(s) of a fundamental right...

9.) Plaintiff as a pre-trial detainee, defendant(s) deprived ddeliberately plaintiff's **Due Process and Equal Protection** by virtue of County Policy, State Law and Usage.

10.) Lastly, plaintiff alleges: **Religious Islamic and Racial Discrimination and, Prejudicial Conduct** on behalf of defendant(s) for plaintiff spitting on a Erie County Sheriff Deputy Official on April 2, 2015 at 12:15 a.m.. Plaintiff arrested March 31, 2015 and, on April 7, 2015 plaintiff sentenced (100) day(s)

(5).

segregated keeplock unit...**which, all the above followed**
**plaintiff to next facility of Erie County Correctional Facility.**
**Plaintiff was provoked at spitting on sheriff deputy...**


11.) Local government are person for purpose of 42 U.S.C. 1983
and, defendant(s) acted under color of law.


The Constitutional basis for this claim under: **42 U.S.C.**
**1983 is: 1st; 5th; 8th and 14th Amendment(s)  and of: 42 U.S.C.**
**2000 cc section(s) 1(a)(1)-(2)(b) and (5)-(7)(a)** And, NYS Constitutio
under: 3rd; 9th and 11th Amendments.

### Relief Sought

The relief iam seeking for this claim: Monetary of Fifty
thousand $50,000.00 dollars and, punitive damages upon the
discretion of the Court.


____ **See next pages for exhaustion of administrative remedies** pg. 6


Do you want Jury trial ?  **No.**

(6).

## Exhaustion of Your Administrative Remedies for this Claim

Did you grieve or appeal this claim ? **Yes**  If so, what was the results ?

Plaintiff on June 2, 2015 was given a written response from grievance coordinator stating a old/past protestant listing of the plaintiff's of ten plus year(s) ago or better old of plaintiff listed as protestant and, reason in part why plaintiff was denied in total of ninety-seven (97) day(s) or fourteen (14) week(s) of religious worship/exercise services of plaintiff's faith and choice "Islam".

Grievance coordinator further made a frivolous statement or response to plaintiff's grievance that plaintiff must address Imam Chaplain to change religious denomination but, plaintiff had addressed Imam Chaplain along with jail administrator(s) of: clerk; records; sergeant(s) and to whom it may concern on numerous time(s) starting from April 8, 2015 proclaiming plaintiff's religion as Islam and, requesting weekly religious worship/exercise, with no response from Imam chaplain in writing nor, in person nor, from jail administrator(s) mentioned above until plaintiff filed grievance on May 30, 2015. Still no response from Imam chaplain in minimum. **Proof by inmate request slip(s) documentation(s).**

Also see attached: **Affidavit in Support of "Bogus" and "Entrapment" Policy/Rule under: Religion of Defendant's** and, attached: **Sworn Affidavit of Muslim Inmate(s) with County Institutional Number(s)/Witnesses of: No Muslim Imam Chaplain at Erie County Correctional Facility in a year or better to conduct Muslim worship/exercise services...**

Plaintiff had proclaimed his plaintiff's already changed religion of prior to plaintiff's March 31, 2015 arrest with no acknowledgement in minimum from Imam chaplain nor jail administrator(s).

Did you appeal that decision ?  **Yes**  If so, what was the results ?

(7).

Plaintiff on June 6, 2015 was given a written response from
grievance coordinator pursuant to: 9NYCRR7032.4(h) under:
**Program Requirements** which, was frivolous and un-related to
plaintiff's Religious issue(s) re: grievance #15RG-099 .
First 1st, religion is not a program requirement status and
thus, does not fall under; **Program Requirements** and 2nd,if so,
the action(s) of sergeant Hayden's religious approval(s) on
June 12, 2015 was and is totally contrary and un-orthodox to
grievance coordinator's response pursuant to: 9NYCRR7032.4(h)
**under: Program Requirements, as quote in part "issue that are**
**outside the authority of the chief administrative officer to**
**control".** Please see attached exhibit of: **Title 9 "Management**
**of County jails pursuant to: 9NYCRR7032.4(h) under: Program**
**Requirements.**

Also see attached: **Affidavit in Support of "Bogus" and**
**"Entrapment" Policy/Rule under: Religion pg.15 of Defendant(s)**
**Inmate Handbook, Revised April 2015 of pg.# 1 second (2nd);**
**third (3rd) and fourth (4th) paragraph(s) therein describing**
**sergeant Hayden's un-orthodox religious approval(s) contrary**
**to grievance coordinator's grievance response(s) in all of**
**June 2, 2015 and in specific June 6, 2015...**

Furthermore, the action(s) of sergeant Hayden's religious
approval(s) on June 12, 2015 is absolutely contrary and
un-orthodox to defendant(s) policy/rule under: Religion pg.15
of defendant(s) inmate handbook, revised April 2015 and **if,**
**the action(s) of sergeant Hayden's religious approval(s) on**
**June 12, 2015 accepted by the Court than, defendant(s)**
**adminstration could had much sooner or earlier than June 12,**
**2015 approved for plaintiff's religious worship/exercise services**
**attendance...and as a pre-trial detainee keeplock inmate.**
A period of **seven-two (72) day(s) or ten (10) week(s) elapsed**
**before either Erie County Jail Facilities attempted to meet**
**plaintiff's religious tenet(s) as per jail's policy/rule under:**
**Religion pg. 15 of defendant(s) inmate handbook, revised April**
**2015. Still no response from Imam chaplain in person nor in**
**writing in minimum...**

(8).

Furthermore and again, reiligion is not a program, religion
is based upon the **Divine Laws** and **Legislation of "God"**,
**Knowledge; Certainty; Sincerity; Truthfulness; Love; Submission**
**internally and externally and Acceptance of "God"**...A Testimony
of faith...

***Lastly, on **June 3, 2015 p.m. (afternoon)** grievance coordinator
made an **written Erroneous statement/claim** that plaintiff had
signed off on grievance **#15RG-099. This is untrue. Proof by**
**inmate request slip(s) documentation(s) of grievance**
**coordinator's erroneous claim**...

However, due to grievance coordinator's frivolous and
unrelated grievance response(s) in paticular of **June 6, 2015**
**pursuant to: 9NYCRR7032.4(h) of: Program Requirements, plaintiff**
**was not allowed to appeal to jail's superintendent nor, to**
**Citizen's Policy and Complaint Review Council of Albany, New**
**York...** However,

****Plaintiff requested to appeal in **objection to** June 6, 2015
**of grievance coordinator's response and/or requested appeal**
**papers as appeal papers was granted in claim # 2 .But, there was**
**no response in minimum from grievance coordinator.** Proof by
inmate request slip(s).

Thus, plaintiff appealed grievance 15RG-099 via inmate
request slip(s) to superintendent without minimum response from
superintendent. Proof by inmate request slip(s) documentation(s).
****Thus, plaintiff was unlawfully forfeited from fully
exhausting administrative remedies.

**Attached copies of any documents that indicate that you have**
**exhausted this claim**

See attached grievance response(s) of the plaintiff's and, those
grievance response(s) in all of grievance coordinator's showing
that exhaustion of administrative remedies exhausted.

**Relief Sought**

Monetary of: Fifty thousand $50,000.00 dollars and, punitive
damages upon the discretion of the Court.

(9).

The constitutional basis for this claim under: 42 USC 1983 is: 1st; 5th; 8th and 14th Admendment(s) and, 42 USC 2000cc section(s) 1(a); (1)-(2)(b) and, (5)-(7)(a). And, NYS Constitution under: 3rd; 9th and 11th Admendments.

---

Do you want jury trial ?  **No.**

*ATTACH TO CLAIM #1*

*30 may 15*

**New York State Commission of Correction**

**Grievance Form Part I**

**Facility:** Erie County Sheriff's Office—Jail Management Div.
☑ Holding Center NY014023C 1403
☐ Correctional Facility NY014013C 1402
☐ Yankee Compound NY011043C 1410

**Housing Location:** *Guch EAST SEGREGATION*

**Grievance #:** _____
*FACILITY ASSIGNS THIS NUMBER*

**Inmate's Name:** RANDOLPH SCOTT

**ICN #:** 34427

Brief Description of the Grievance (Completed by the Grievant):

**Number of Additional Sheets Attached** (C)

THE WRITER HAS BEEN DELIBERATELY AND INTENTIONALLY DENIED ONE ON ONE RELIGIOUS SERVICES OF THE WRITERS FAITH AND CHOICE "ISLAM". THE WRITER FOR TWO (2) MONTH (S) HAS ORALLY AND BY WRITTEN REQUESTED, REQUESTED RELIGIOUS SERVICE AND TO NO AVAIL HAS THE ADMINISTRATION MET THE WRITERS NEEDS. NOR HAS THE WRITER BEEN PROVIDED "ISLAMIC" READING MATERIAL, OPPOSE TO CHRISTIANITY BIBLES ARE PROVIDED IN ALL SEGREGATED SPECIAL HOUSING "CELLS". ONCE AGAIN, THE WRITER IS BEING FORCED TO ACCEPT A RELIGION THAT

Action Requested by the Grievance (Completed by the Grievant):

**Number of Additional Sheets Attached** (C) *(OVER)*

① TO BE PROVIDED RELIGIOUS SERVICES AS STATED ABOVE WITH "NATION OF ISLAM" AND/OR "SUNNI MUSLIM". THE WRITER PREFER NATION OF ISLAM MINISTER, BUT SUNNI MUSLIM WILL ALSO DO.

② TO BE PROVIDED ISLAMIC READING MATERIAL AS CHRISTIANITY BELIEVERS ARE PROVIDED FOR THEIR NEEDS...

**Grievant Signature:** _R. K. A. Noll_    **Date/Time Submitted:** 5/30/15

**Receiving Staff Signature:** _____    **Date/Time Submitted:** 30 May 15

Summary of Facility Staff attempts to resolve (Attach Relevant Documentation):

**Number of Additional Sheets Attached** (   )

Beyond this Deputies This Deputy was unable to resolve. Sgt notified You are currently listed as Protestant. If you wish to change your religious denomination, send a Inmate Request Slip to the chaplain of the religion you want to join. The chaplain will read your slip and if he/she approves the change you can request muslim service ...

**3** Language Barrier, List language _____ : Name of Interpreter and affiliation _____
**3** Cognitive Disability Barrier, Low literacy, if box is checked, what steps were taken to assist grievant? (List above)

**Officer/Supervisor Signature** _____   **Date/Time:** 6/01/15   2330

[   ] I agree to accept the informal resolution to my Grievance

[   ] I do not agree to accept the informal resolution to my Grievance

**Grievant Signature:** _R. K. A. Noll_    **Date/Time Submitted:** 6/2/15

**Forward to the Grievance Coordinator:** *Grievance must be forwarded to the Grievance Coordinator within 24 hours of submission*

**Officer/Supervisor Signature:** _____    **Date/Time:** 6/2/15   0510

**Received by the Grievance Coordinator:**

**Grievance Coordinator Signature:** _____    **Date/Time:** _____

# ERIE COUNTY SHERIFF'S OFFICE



## JAIL MANAGEMENT DIVISION

6/6/2015

**TO:** Scottq, Randolph   34427                    **G EA 39**

**RE:** Grievance 15RG-099

Please be advised that I am in receipt of your Inmate Grievance dated          6/3/2015

Please be advised that pursuant to 9NYCRR7032.4(h) Program Requirements, Grievances regarding issues that are outside the authority of the chief administrative officer to control, or complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable and may be returned to the inmate by the grievance coordinator. Such grievances may not be appealed to the Chief Administrative Officer or the Citizens' Policy and Complaint Review Council.

Approval is required from the Iman to change your religious status. You request has been forwarded to him. Once approved, you will be attend his service.

Therefore, this shall serve to inform you that your grievance dated          6/3/2015
cannot be processed and is being returned to you.  This grievance may not be appealed to the chief administrative officer or the Citizens' Policy and Complaint Review Council.  No further action will be taken regarding this matter.

Thank you.

Sgt. McAndrew

Grievance Coordinator

CC: Grievance File

9 NYCRR 7032.4, Facility program requirements.

*40719 9 CRR-NY 7032.4

# OFFICIAL COMPILATION OF CODES, RULES AND REGULATIONS OF THE STATE OF NEW YORK TITLE 9. EXECUTIVE DEPARTMENT SUBTITLE AA. STATE COMMISSION OF CORRECTION CHAPTER I. MINIMUM STANDARDS AND REGULATIONS FOR MANAGEMENT OF COUNTY JAILS AND PENITENTIARIES SUBCHAPTER A. MINIMUM STANDARDS AND REGULATIONS PART 7032. GRIEVANCE PROGRAM

*Current through December 15, 2014*

## 7032.4 Facility program requirements.

(a) Any inmate incarcerated in a local correctional facility shall be provided access to the facility's grievance program.

(b) Instructions for filing a grievance shall be included in the facility rules and information as required by section 7002.9(a)(15) of this Chapter.

(c) Each inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission.

(d) Facility staff shall make forms readily available so that an inmate may file a grievance. An inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance.

(e) The chief administrative officer of each local correctional facility shall designate a staff member(s) to act as grievance coordinator(s).

(f) The chief administrative officer or his designee shall ensure that each grievance is investigated to the fullest extent necessary by an impartial person who was not personally involved in the circumstances giving rise to the grievance; provided, however, that a grievance that is too vague to understand or fails to set forth supporting evidence or information may be returned to the inmate. Failure to supply sufficient information or evidence within two days shall be cause to deny the grievance.

(g) At a minimum, each investigation of an inmate grievance shall include gathering and assessing the following information:

(1) a description of the facts and issues underlying the circumstances of the grievance;

(2) summaries of all interviews held with the grievant and with all parties involved in the grievance;

(3) copies of pertinent documents; and

(4) any additional relevant information.

(h) Grievances regarding dispositions or sanctions from disciplinary hearings, administrative segregation housing decisions, issues that are outside the authority of the chief administrative officer to control, or complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable and may be returned to the inmate by the grievance coordinator. Such grievances may not be appealed to the chief administrative officer or the Citizens' Policy and Complaint Review Council.

*40720 (i) Within five business days of the receipt of a grievance, the grievance coordinator shall issue a written determination. Such determination shall specify the facts and reasons underlying the coordinator's determination. A copy of such determination shall be provided to the grievant.

(j) Within two business days after receipt of the grievance coordinator's written determination, the grievant may appeal to the chief administrative

## Memorandum Law

    State Commission of Correction has published a **rule prohibiting discriminatory treatment 664N.Y.S. 2d 973 (Thomas v. Lord N.Y. Sup. 1997) 174 Misc. 2d 468 and 470** including such treatement based on **religion 9 NYCRR Part 7695.** The Department of Correction is required to develop procedures designed to prevent **unlawful discrimination** in any facility *979 (Thomas v. Lord (N.Y. Sup.1997), 664 N.Y.S. 2d 973, 174 Misc. 2d 461 **decision-making process not limited to: religion 9 NYCRR 7695.4 (a), e.g. (filing of grievance petition without reprisals, etc. etc.)**

    To ensure that such unlawful discrimination does not occur, **the letter and spirit of N.Y. Constitution Article 1, § 3 and Correctional Law § 610 (1) (3)** one has the right and, shall be allowed to **"particpate"** in all religious (e.g. Islamic) observations and available to any other inmates, subject to any legitimate religious or penologic restriction as may be appropiate...**However, legitimate religious or penologic restriction was not the case in minimum with plaintiff period.** 174 Misc. 2d 471.

Footnote # 1

    There is a portion of Correctional Law § 610 that is directly applicable to the issues in this case. **"The right of the inmate to "particpate" in religious services; receive spiritual advice and ministration is to be obtained"** from some recognized clergymen of the denomination or church which said inmate may "respectively prefer" or to which they may have "belonged" prior to their being confined in such institution, Correctional Law

**Footnote # 1, See Plaintiff's First Claim at pg. 2 # 2**

(2).

§ 610 (3); See: SaMarion V. McGinnis, 55 Misc. 2d 59,63 (Erie
Co. 1967), 284 N.Y.S. 2d 510 *Footnote # 2; See: Brown v.
McGinnis, 10 N.Y.S. 2d 531, 225 N.Y.S. 497, 180 N.E. 2d 791;
Sostre v. McGinnis 2d 2d Cir. 334 F.2d 906 also see: C. Erie
Linclon, The Black Muslim in America.

The religious choice **initially** is the inmate's, not the
State's and not that of the representative of the State
whether in a **religious capacity or otherwise. Note:** while the
notation of **"protestant" supposedly** on the intake form or evidence
petitioner may have at one point delcare himself a **"protestant"**
are relevent to the question of religious identity, **"they are
irrelevent to the religious belief petitioner desire to
practice** while in New York State **"County Jail"** Correctional
Facility and, the question of "religious identity is one to
be made by "religious officials and, not members of the executive
or judicial branches of the government, the decision of who
is fully a member of the religious organization is <u>also</u> a
determination to be made by religious officials. See: Footnote
# 3.

An incarcerated individual who is recognized member of a
religious organization whether memebership is available by birth
or conversion, **may nevertheless "particpate" in the religious
service of the faith they may prefer, N.Y. Constutional Article
1 § 3; Correctional Law § 610. Thomas v. Lord 664 N.Y.S. 2d
973 (N.Y. Sup. 1997 (174 Misc.2d 469.** See footnote # 4

Footnote # 2. See Plaintiff's First Claim pg. 1 at # 3 therein and at bottom
of pg. 1 at <u>Additional Factual Part of First Claim # 1;</u> also at pg. 2 at
# 2 and # 3 therein along with grievance filed...

Footnote # 3. <u>See First Claim at pg. 7 at 3rd and 4th paragraph therein and
pg. 4 of First Claim # 8 therein. And see: Attached Exhibit of: Sworn
Affidavit of Muslim inmate(s) of: No muslim Imam chaplain in a year or better
at Erie County Correctional Facility to conduct muslim worship/exercise
services, etc. etc.</u>. Affidavit of Muslim Inmate(s) in Affidavit to Support
First Claim. Please See: Plaintiff's grievance filed...

(3).

**See footnote # 4**

State regulations are promulgated by State Commission of Corection, and consist of certain regulations for the minimum standards for the care, custody, treatment and supervision of inmates in correctional facilities under the authority of Correctional law § 45.

The regulations promulgated for <u>County Jails</u> and pentiaries, 9 NYCRR part 7000 et seq., are more extensive than those promulgated for State Correctional Facilities.

Pursuant to 9 NYCRR 7024(a) and (d) **County Prisoners have an "unrestricted right" to hold any religious belief and to be a member of any religious group or orgainization 9 NYCRR 7024(a), Equal Status and Protection shall be afforded** <u>**all**</u> **prisoners in the exercise of their religious belief... 9 NYCRR 7024 1(d). See: 371 F. Supp. F. Sup. at 623 and in, Brenneman v. Madigan 343 F. Supp. 128 N.D. Cal. 1972 The Court held that: "Pre-trial detainees do not stand on the same footing as convicted inmates...subjecting pre-trial detainees to** <u>**restrictions and privations other than those which inhere in their confinement itself or which is justified by compelling necessities of jail administration, is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.**</u>

**See footnote # 5**

The Demands of Equal Protection of Laws and Due Process prohibits depriving pre-trial detainees the **"<u>right</u>s"** of other citizens to greater extend than necessary to assure appearance at trial and security of the jail and the same constitutional provisions prevent unjustifiable confinement of detainees under worse conditions as convicted prisoners.

Footnote # 4 See: First Claim pg. 3 at # 1 under: <u>Plaintiff Further Alleges Against Defendant(s) # 1 therein.</u>

Footnote # 5 at bottom of this pg.

The quoted above section(s) pursuant to 9 NYCRR of 7000 et. seq. help guarantee an individual exercise of his religious beliefs **664 N.Y.S. 2d 973, 174 Misc. 2d 461 * 978 Thomas v. Lord, (N.Y. 1997)** they prevent the State **from or favoring one religion while witholding recognition or favor another.** See: SaMarion v. McGinnis (N.Y. 1967) 384 N.Y.S. 504, 55 Misc. 2d 59 of muslim inmates 50 plus years ago and still in 2016... See: footnote # 6

**Courts have acknowledged that prisoners have obvious** placed limitations placed on their privileges and rights.

However, "It is well established that prisoners do not lose all their Constitutional rights and the Fourteenth Amendment following them into prison and protects them there from **unconstitutional action on part of prison authorities carried out under color of State Law" Washington v. Lee 263 F.Supp. 327,331 N.D. Ala., affirmed sub. nom., 389 U.S. 967,, 88 S.ct. 457, 9 L. Ed. 2d 457 (1967).**

____Futhermore, when the rights of those prisoners who are held as pre-trial detainees are in question they have subjected the case to even closer scrutiny. **Anderson V. Nosser, 438 F. 2d 183 (5th Cir. 1991).**

In addition to the **Federal Constitutional** right to the free exercise of religion, the **Constitution of the State of New York** strongly **guarantees** such right. "The free exercise and enjoyment of religion profession and worship, without **discrimination or preference, shall forever be allowed in this State to all mankind ;..." New York Constitution Article 1 § 3.**

Footnote # 5: See plaintiff's First Claim at pg. 2 # 2.
Footnote # 6: See plaintiff's Affidavit In Support of First Claim at pg. 6 # 8 therein and, First Claim pg. 1 under: Additional Factual Part First Claim # 1 therein, bottom of pg.

(5).

"This free exercise right has expressly been extended to those incarcerated in New York Correctional Facilities by **Section 610 of the Correctional Law.**

In so providing, the **Legislature recognize the positive effect that religion can have in** rehabilitation in inmates and in shaping their behavior while in jails. These provisions of **New York Law manifest the importance which our State attaches to the free to the free exercise of religious beliefs,aallbberty interest which has been called a 'prefered right' (Matter of Brown v. McGinnis, 10 N.Y. 2d 531, 536 [225 N.Y.S. 2d 497, 180 N.E. 2d 791 supra)."** Matter of Rivera v. Smith, 63 N.Y. 2d 501, 510-511, 483 N.Y.S 2d 187, 472 N.E. 2d 1015 (1984).

The **U.S. Supreme Court** has described the freedom of religion and conscience secured by the **Federal Constitution as one of the fundamantal preferred freedoms guaranteed by the Constitution.** See Pierce v. La Valle, 293 F2d 233 (2d Cir. 1961) and cases cited therein. <u>**The Appellate Division, Fourth Department, in**</u> <u>**Matter of Rivera v. Smith reconize that the concern for religious**</u> <u>**freedom held by citizens of New York is greater than exist in**</u> <u>**other juridictions. 99 A.D. 2d 672, 472 N.Y.S. 2d 210 (4t Dept.)**</u> <u>**\*977, aff. 63 N.Y. 2d 501, 483 N.Y.S. 2d 187,472 N.E. 2d 1015.**</u>

## Eighth Amendment

1.) <u>Subjectively,</u> defendant(s) had a culpable state of mind based upon plaintiff's 1.) grievance filed with jail administration regarding plaintiff's denial of Islamic religious particpation; 2.) numberous inmate request slip(s) submitted before Imam muslim chaplain, chief administrative officier/ Supervisory Official(s) requesting Islamic religious particpation; 3.) Defendant(s) policy/rule governing religion; 4.) Correctional Law § 610; 5.) New York State Regulation pursuant to 7024 et. seq.; 6.) Fact that plaintiff rendered an **option** for one on one private Islamic religious worship/ exercise service particpation; 7.) Fact that defendant(s)

do not recognize or acknoledge Black Muslim Religion under:
Nation of Islam in 2016...at either Erie County Jail Facilities..
**8.)** There was absolutely no penologic interest e.g. (as religious
restrictions) nor, of a religous legitimate reason and, there
was absolutely nothing in writing by chief administrative officer
of such pursuant to State Regulations; **9.)** Defendant(s)
**vindictive transfer of plaintiff June 4, 2015 <u>with defendant(s)</u>**
**<u>knowledge of there being no muslim Imam chaplain at Erie County</u>**
**<u>Correctional Facility in a year or better to conduct muslim</u>**
**<u>Jumuah religious worship/exercise services particpation nor,</u>**
**<u>Ramadan nor, prayer nor, Islamic study/exercise as e.g. (bible</u>**
**<u>study) nor, for celebration(s) and recital(s) during special</u>**
**<u>Islamic event(s), etc. etc...; 10.)</u>** Lastly, considering other
muslim inmate(s) numberous inmate request slip(s) to Chief
Administrative Officer/Supervisory Official(s) concerning Islamic
services, diets and, with the fact that Erie County Correctional
Facility for some years has transfered muslim inmates **"back
to old jail"** of Erie County Holding Center for muslim Ramadan
fast and feast celebration for, Erie County Correctional Facility
absolutely do not acknowledge nor, recognize muslim Ramadan
nor, muslim worship/exercise services nor, muslims period...See:
attached sworn affidavit of muslim inmate(s) with county
instutitional number(s) of: No muslim Imam Chaplain at Erie
County Correctional Facility in a year or better to conduct
muslim religious worship/exercise services, etc. etc...Sworn
affidavit attached to: Affidavit In Support of First Claim therein.

   Thus, substaniating a culpable state of mind in: Phelps
v. Kapnolas, 308 F.3d 180, 185 (2d Cir.) and, as also established
within the objective element of following page.


   Official(s) knew of and disregarded an excessive risk to
plaintiff's health, spiritually, and mentally. The official(s)
was aware of fact(s) from which the inference could be drawn
that a substantial risk of serious harm existed, Farmer, 511
U.S. at 834, 114 S.Ct. 1970 and must draw the inference as described by
U.S. Supreme Court detailing the right to freedom of religion and

(7).

conscience secure by the Federal Constitution as one of the fundamental preferred freedom guaranteed by the Constitution... and, Legislature recognize the postive effects that religion can have in **rehabilitation...**

<u>Objectively:</u> <u>The</u> <u>Cause</u> <u>and</u> <u>Effect</u> <u>of:</u> **Plaintiff spitting on** <u>a</u> Erie County Sheriff Deputy April 2, 2015 at 12:45 a.m. at Erie County Holding Center, resulted in a number of religious deprivation(s) as described in the **subjective element** which, the **cause and effect** followed plaintiff to next facility of Erie County Correctional Facility from Erie County Holding Center...along with plaintiff's constant persistence towards religious particpation as a black muslim inmate...

Plaintiff's disciplinary infraction was totally unrelated to religion nor, did it surround religion in minimum...

## Inadequate Resoucres

Inadequate resoucres can never be an adequate justification for the County depriving any person his constititional rights. If the County cannot obtain the resoucres to **detain** persons **awaiting trial** in accordance with the minimum constitutional standards, than the County simply will not be permitted to obtain such person.

Footnote # 7:

Local government are authorized to contract indebtness for maintenance of correctional facilities by **Section 1 of Article V11 of New York State Constitutional and Section 217 of the County Law require each County Facility to continue to maintain a county prescribed by law,** Section 500-c: inmate shall be allowed to converse with religious advisor under such reasonable regulations 62 A.D. 2d 687; Hamilton v. Love 328 F.Supp. 1182.

Considering the over-all fact(s) contained and, in its totality, defendant(s) deliberately and intentionally deprived plaintiff of a "Fundamental Right" of "Freedom of Religion"

(8).

to particpate...with **"cruel and unusual punishment"**...

**Footnote # 7: See plaintiff's First Claim at pg. 4 under:** Plaintiff
Further Alleges Against Defendant(s) # 8 therein.


Dated: _____11 / 11_____ 2015

                                        11/11/15
                                        Randolph Scott 15-B-2127
                                        Wyoming Correctional
                                        Facility
                                        P.O. Box 501
                                        Attica, New York 14011-
                                        0501

(1).

## Affidavit in Support of Claim # 1

**1.)** Plaintiff's oral and written request(s) as per jail's policies/rules were submitted between April 8, to May 30, 2015 via inmate request slip(s) to Imam chaplain; clerk; records; sergeant(s) and to whom it may concern of plaintiff proclaming his plaintiff's faith "Islam" and, requesting weekly religious worship/exercise service attendance of plaintiff's faith and choice "Islam". **Proof by inmate request slip(s) documentation(s).**

Plaintiff's written request(s) were in compliance to jail's policy/rule under: **1V Keeplock Status pg. 31 # 6 and # 8 therein and, jail's policy/rule under: Religion pg. 15 (in whole) and, in specific 4th paragraph therein.** Both policies/rules of defendant's inmate handbook, revised April 2015.

**2.)** Plaintiff as per jail's policy/rule under: Religion had filed a number of written inmate request slip(s) between April 8, 2015 to May 30, 2015 proclaiming plaintiff's religious faith as muslim and, requesting weekly religious worship services attendance via inmate request slip(s) to Imam chaplain; clerk; records; sergeant(s) and to whom it may concern with no response in minimum from Imam chaplain in writing nor in person, totally contrary to policy/rule under: Religion. **Proof by documentation(s) of inmate request slip(s).** A period of fifty-eight (58) day(s) or eight (8) week(s) elapsed without minimum response from Imam chaplain in writing nor, in person nor, from either above-mentioned jail administrator(s) official(s) of Erie County Holding Center.

**3.)** Plaintiff as per jail's policy/rule under: Religion had proclaimed plaintiff's muslim faith/religion starting of April 8, 2015 and prior to June 2, 2015 date of grievance coordinator(s) so-called grievance resolution rendered re: grievance #15RG-099 filed May 30, 2015 which, plaintiff disagreed with grievance coordinator(s) grievance resolution. Plaintiff continued to proclaim his plaintiff's muslim faith in writing via inmate request slip(s) to Imam chaplain; clerk;

records; sergeant(s) and, to whom it may concern with no response
from jail administrator(s) in minimum response. Proof by
documentation of inmate request slip(s).


4.) On June 3, 2015 a.m. (morning) plaintiff was taken
un-orthodox to duty office at Erie County Holding Center in
presence of sergeant McAndrews, grievance coordinator and,
sergeant  Knesivic for purpose of sergeant(s) intimadating
plaintiff to deter plaintiff from exhausting administrative
remedies re; grievance #15RG-099 re: Denied religious worship / exercise
services.

Both above-named sergeant(s) on June 3, 2015 a.m. (morning)
stated to plaintiff that "if plaintiff would sign off on
grievance #15RG-099 that both sergeant(s) named here-in would
agree to allow plaintiff to attend muslim worship services
on JUne 5, 2015.

However, plaintiff refused to sign off on grievance #15RG-
099. Proof by documentation of inmate request slip(s). Also
see attached: Affidavit in Support of "Bogus" and "Entrapment"
Policy/Rule under: Religion #1 and #2 therein.

Plaintiff on June 4, 2015 at approximately 11:00 p.m. (nite),
plaintiff was maliciously and vindictively transferred to Erie
County Correctional Facility in Alden, N.Y. from Erie County
Holding Center, Buffalo, N.Y.. Both facilities under the same
entity  and of defendant Howard, Sheriff and, County of Erie as "person".

Plaintiff's attendance to muslim worship service on June
5, 2015 was sabotaged by sergeant McAndrews and sergeant Knesivic
for plaintiff's refusal to sign off on grievance #15RG-099 on
June 3, 2015 a.m. (morning). Proof by documentation of inmate
request slip(s).

Plaintiff was also spitefully or hatefully transferred to
Erie County Correctional Facility on June 4, 2015 for purpose  too,
to sabotage plaintiff's particpantion in muslim ramadan fast
and feast at Erie County Holding Center on June 18, 2015 for,
Erie County Correctional Facility does not recognize or
acknowledge muslim ramadan fast or feast and, just as there

is absolutely no muslim Imam chaplain at Erie County Correctional
Facility to conduct muslim worship services in a year or better
as per jail's policy/rule under: Religion pg. 15 of defendant's
inmate handbook, revised April 2015. Please see attached: Sworn
Affidavit of Muslim Inmate(s) with Institutional Number(s)/
Witnesses of: No Muslim Chaplain at Erie County Correctional
Facility in a year or better to conduct muslim religious worship/exercise
services.

Although, muslim inmate(s) at Erie County Correctional
Facility are given a choice or option to particpant in muslim
ramadan fast and feast between June 18, to July 19, 2015 by
muslim inmate(s) being transfered permenently back to old
facility of Erie County Holding Center jail. Plaintiff was not
afforded that choice or option, totally contrary to policy/rule
#6 of: 1V Keeplock Status pg. 31 of defendant's jail inmate
handbook, revised April 2015.

Please see attached: Affidavit in Support of "Bogus" and
"Entrapment" Policy/Rule under: Religion of Defendant's inmate
handbook pg. 15, revised April 2015.

Although, due to plaintiff's health issues and in transit,
plaintiff had intended not to particpant in muslim ramadan this
past period of year but, this was not known by Erie County
Holding Center official(s) and, prior to plaintiff's vindictive
transfer on June 4, 2015.

Plaintiff's belief is there is no full time regular muslim
chaplain at Erie County Holding Center as per jail's policy/rule
under: Religion and, just as there is absolutely no muslim Imam chaplain
period at Erie County Correctional Facility as per New York
State Minimum Standards and, as per jail's policy/rule under;
Religion pg. 15 of inmate handbook, revised April 2015.

1.) Nor was there an muslim inmate qualified to conduct
(Al-Jumuah) muslim religious services. 2.) Nor, was authorization
attempted to be given by jail administrator(s) to a muslim inmate
to attempt to conduct a (Al-Jumuah) muslim religious worship/exercise
services. 3.) Nor, were Holy Koran(s) provided by jail
administrator(s) that a (Al-Jumuah) muslim religious worship/exercise
service could attempted to be conducted and, 4.) Nor, could

(4).

a muslim "holy Koran" e.g. (bible study) be conducted as other
religious faith(s) tenet(s) were met by jail administration
as per jail's policy/rule under: Religion pg. 15 of defendant's
inmate handbook, revised April 2015.

Please see attached: **Sworn Affidavit of Muslim Inmate(s)/
Witnesses with county institutional number(s) of: No muslim
(IMam) chaplain to conduct muslim religious worship/exercise
services at Erie County Correctional Facility in a year or
better and, as afforded to other religion(s).**

5.) Plaintiff spiteful transfer arrival at Erie County
Correctional Facility on **June 4, 2015** the following day(s)
plaintiff was deliberately and intentionally denied <u>an additional
**fourteen (14) day(s) or two (2) week(s) of muslim religious
worship/exercise services.**</u> Plaintiff still under keeplock status
after transfered from Erie County Holding . **Proof by inmate
request slip(s) documentation(s).**

Please see "Face sheet" of (Inmate profile/information sheet
of inmate) document at Erie County Correctional Facility where
sergeant Hayden documented on "Face sheet" **June 12, 2015** approval
for plaintiff's memembership as a muslim and also, approval
for plaintiff's attendance at muslim weekly religious worship/
exercise services.  **A period of seventy-two (72) day(s) or ten
(10) week(s) elapsed before either Erie County Jail Facilities
attempted to meet plaintiff's religious tenet(s) as per jail'
policy/rule under: Religion pg. 15 of defendant's inmate handbook
, revised April 2015.**
Plaintiff still remained as a pre-trial detainee keeplock
inmate and, was sentenced on **June 25, 2015**...
**These religious approval(s) on behalf of sergeant Hayden's
was done without presense** of either faith chaplain(s), totally
contrary to policy/rule under: **Religion** pg. 15 of defendant's
inmate handbook, revised April 2015 and, totally contrary to
grievance coordinator's grievance response(s) rendered to
plaintiff's grievance #15RG-099 on **June 2, 2015 and in specific**

(5).

**June 6, 2015 response**...Please see attached: grievance #15RG-099 and, response(s) from grievance corrdinator to plaintiff's grievance.

Print out time on "Face Sheet" document is **June 4, 2015 at 17:38 hour.** Printed prior to plaintiff's vindictive transfer on **June 4, 2015 at approximately 11:00 p.m..** Plaintiff will make demand for discovery re: "Face Sheet" document of inmate profile/information sheet of inmate. Document in inmates file records room at Erie County Correctional Facility.

6.)On **June 19, 2015 p.m.**, plaintiff was finally allowed to attend for the first (1st) time a so-called congregated muslim worship/exercise at Erie County Correctional Facility as a keeplock inmate.

However, Erie County Correctional Facility has not had a muslim Imam chaplain in a year or better. **Please see attached: Sworn Affidavit of Muslim Inmate(s) with county institutional number(s)/witnesses from Erie County Correctional Facility statement(s) of: "Absolutely No Muslim "Imam" chaplain in a year or better at Erie County Correctionaly Facility to conduct religious worship/exercise services..as** afforded to other faith religions.

Nor, were there holy koran(s) provided by jail administrator(s) for muslim religious tenet(s) requirements as other faith(s) religious afforded nor, was there a qualified muslim inmate to conduct (Al-jumu-ah) muslim religious worship/ exercise services could attempted to be conducted by an muslim inmate nor, was authorization attempted to be given by jail administration to a muslim inmate to attempt to conduct a (al-jumu-ah) muslim religious worship/exercise sevices nor, could a holy koran e.g. (bible study) be conducted as other faith religons afforded

Please see attached: **Affidavit in Support of "Bogus" and "Entrapment" Policy/Rule under: <u>Religion</u> pg. 15 of defendant's inmate handbook, revised April 2015 of pg. 15 of 4th paragraph.**

7.) Plaintiff had continued to count day(s) and/or week(s) denied muslim religious worship/exercise sevices at Erie County Correctional Facility, with there being no "Imam" muslim chaplain to conduct religious worship/exercise services as per jail's

policy/rule under: **Religion and, in conjunction with day(s) and/or week(s) denied religious worship/exercise services with grievance #15RG-099 filed May 30, 2015 re: Denied religious worsip/exercise services starting from Erie County Holding Center from April 8, 2015 to July 13, 2015 plaintiff's departure from Erie County Correctional Facility.** Both facilities of same entity and of defendant Howard, Sheriff and, County of Erie as "person".


8.) Plaintiff denied fifty-eight (58) day(s) or eight (8) week(s) of religious muslim text(s) at Erie County Holding Center, opposed to christianity keeplock inmate(s), bibles were in all keeplock segregated cells for christian inmate(s) religious tenet(s) nor, was there holy koran(s) in keeplock cells nor, would jail administration afford plaintiff a holy koran for plaintiff's religious worship/exercise tenet(s) as provided for christian(s) keeplock inmate(s) religious tenet(s) met by jail administration.

Defendant(s) was subjectively and, objectively forcing plaintiff to accept christianity opposed to Islamic faith. Defendant(s) sanctioned christianity opposed to Islamic inmate(s) religious tenet(s). Holy Koran is required for ceremonial recital, etc. etc.


9.) Plaintiff as per jail's policy/rule under: **Religion** pg. 15 of defendant's inmate handbook, revised April 2015. Plaintiff had wrote Imam Chaplain and jail administrator(s) via inmate request slip(s) proclaiming plaintiff's faith as muslim and also, as plaintiff being muslim prior to plaintiff's arrest of March 31, 2015.

Plaintiff had asked Imam chaplain and jail administrator(s) for their acknowledgement of plaintiff's already changed religion and, for attendance in future weekly muslim worship/exercise services.

**A period of fifty-eight (58) day(s) or eight (8) week(s) elapsed without minimum response from Imam chaplain in writing nor, in person nor, from jail administrator(s) until plaintiff filed grievance on May 30, 2015 at Erie County Holding Cenetr.**

(7).

**10.)** Plaintiff on **May 30, 2015** filed grievance re: Denied Muslim Religious worship/exercise services. Grievance coordinator(s) grievance resolution response on **June 2, 2015** was that, plaintiff listed as protestant and, reason given by jail administrator(s) of why plaintiff denied fifty-eight (58) day(s) or eight (8) week(s) of religious worship/exercise services of plaintiff's faith and choice "Islam"...**Still no response from muslim Imam chaplain in minimum**, totally contrary to policy/rule under: Religion pg. 15 of inmate handbook of defendant's, revised April 2015.

This so-called protestant listing is from Erie County Holding Center old/past booking record(s) of old/past arrestees of ten (10) plus years ago or better ago from past booking record(s) at Erie County Holding Center.

It has been several plus years ago or better since plaintiff's last arrest prior to **March 31, 2015** arrest of plaintiff and, of a booking questionaire conducted on plaintiff by either entities of: **Erie County Holding Center/Sheriff Department and also of: City of Buffalo Police Central Booking**...

**11.)** The Erie County Holding Center has not conducted booking questionaire procedures of new arrestees at their jail in ten (10) plus years ago or better...

**12.)** Booking new entry arrestees for the last ten (10) years or better has been conducted by **Buffalo Police Central Booking at 121 West Eagle Street, Buffalo, New York**...A entirely **different entity of law enforcement than Erie County Holding Center/Erie County Sheriff Department**...

Thus, the Erie County Holding Center record of plaintiff listed as protestant is a old/past record, a very old/past protestant record listing plaintiff as protestant of ten (10) plus years old or better ago/old...

A old/past protestant record listing used to sabotage plaintiff's religious worship/exercise services, religious choice and, of plaintiff's religious civil right(s), freedom of religion.

13.) Plaintiff on **March 31, 2015** arrest was so much under the influence and, violently disruptive that an up to date booking questioniare could not be conducted on plaintiff by **Buffalo City Police Central Booking March 31, 2015 arrest** date of plaintiff. **Proof by documentation(s) of Buffalo City Police Central Booking.**

_____Plaintiff on **March 31, 2015** arrest was so much under the influence that plaintiff could not sign his (plaintiff's) personal property slip of: money; clothing; house key(s); etc. etc. at Buffalo Police Central Booking on **March 31, 2015** at approximately 3:00 p.m. arrest.

**Proof by Buffalo Police Central Booking documentation of: Inmate property slip, etc. etc. that booking questionaire not conducted.**

**Buffalo Police Central Booking photo(s) (mug shots) were not taken of plaintiff until next morning of** April 1, 2015 with plaintiff signing at that time an **up to date** city police photo shoot (mug shots) taken as of **April 1, 2015** just prior to plaintiff's court arraignment appearance of plaintiff in **Buffalo City Court.** Furthermore, confirmation that a booking questionaire not conducted on plaintiff during period of **March 31, 2015 to April 1, 2015 or thereafter...**

14.) There is no current signature and dated by plaintiff showing a current booking questionaire conducted by **Buffalo Police Central Booking nor, at Erie County Holding Center between March 31, 2015 to April 1, 2015 or thereafter** when plaintiff taken into custody by Erie County Sheriff Department from Buffalo City Court and, transfered to Erie County Holding Center.

The only time Erie County Holding Center jail does booking of new entry arrestees is when parole/probation violatr(s) are brought directly from parole/probation office(s) directly to Erie County Holdind Center and/or a new entry arrestee is arrested **directly** by Erie County Sheriff Department period are booking procedures conducted at Erie County Holdin Center/Sheriff Department...

(9).

15.) Plaintiff was never on anytype of serious medication(s) except motrin and, albuterol asthma inhalor(s) medication(s) during incarceration of plaintiff at either Erie County Jail's Correctional Facilities.

***16.) Lastly, plaintiff was prejudiced and, discriminated against by Erie County Holding Center Jail Official(s) for plaintiff **spitting** on a deputy sheriff official...after being provoked.

Plaintiff sentenced one-hundred (100) day(s) keeplock; one (1) hour loss of visit; twenty-five $25.00 dollars disciplinary sur-charge and, charged in criminal court with court sur-charges.

Note: There was absolutely no restrictions placed on plaintiff's religious worship/exercise by Jail Administration at anytime, as to private services. as a disciplinary keeplock inmate.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Dated: _10/9/15_                    _R Sr____

Plaintiff's signature
Randolph Scott 15-B-2127

Sworn to before me this _9th_ day of _OCTOBER_

_____ 20 _15_

Notary Public

REBECCA S ORR
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OR6330437
Qualified in Genesee County
My Commission Expires September 14, 201

Exhibit of Sworn Affidavit of Muslim
Inmate(s) of: No Imam Chaplain as per jail's
Policy/Rule under: Religion

Affidavit in Support of Claim #1

I, RANDOLPH R. SCOTT, BEING DULY SWORD, DEPOSES AND SAYS:

ON THE 19th DAY OF JUNE 2015, A FACT WAS BROUGHT TO MY (RANDOLPH SCOTT) ATTENTION. WHERE: ERIE COUNTY CORRECTIONAL FACILITY AT: 1:00 P.M. SO-CALLED MUSLIM SERVICES, MUSLIM INMATES AT SO-CALLED MUSLIM SERVICES INFORMED ME (RANDOLPH R. SCOTT) THAT, THERE IS NO MUSLIM IMAM CHAPLAIN AT JAIL AND NOR, HAS THERE BEEN AN MUSLIM IMAM CHAPLAIN IN APPROXIMATELY A YEAR OR BETTER AT ERIE COUNTY CORRECTIONAL FACILITY.

THE INMATE(S) NAME(S) AND INSTITUTIONAL # LISTED BELOW ARE NAMES OF MUSLIM INMATE(S) ATTENDANCE AT SO-CALLED MUSLIM SERVICES AND, CONFIRMATION THAT THERE IS NO MUSLIM IMAM CHAPLAIN AS BASED ON THE FACT(S) STATED HEREIN ABOVE.

| PRINT NAME CLEARLY | SIGNATURE | INSTITUTIONAL # |
|---|---|---|
| 1.) Angel Burgos | Angel Burgos | 140551 |
| 2.) James Bates | James Bates | 100587 |
| 3.) RANDOLPH SCOTT | R. Scott | 34427 |
| 4.) Silvester Johnson | Silvester Johnson | 109708 |

ERIE COUNTY STATE OF NEW YORK
Qualified in Erie County
JOHN J. WYTKOWSKI
NOTARY PUBLIC, STATE OF NEW YORK

Case 1:15-cv-01000-RJA-LGF   Document 1   Filed 11/17/15   Page 35 of 68

9 NYCRR 7024.9, Exercise of religious beliefs by prisoners in segregation.                    Page 1

**\*40679 9 CRR-NY 7024.9**

**OFFICIAL COMPILATION
OF CODES, RULES AND
REGULATIONS OF THE
STATE OF NEW YORK
TITLE 9. EXECUTIVE
DEPARTMENT
SUBTITLE AA. STATE
COMMISSION OF
CORRECTION
CHAPTER I. MINIMUM
STANDARDS AND
REGULATIONS FOR
MANAGEMENT OF COUNTY
JAILS AND PENITENTIARIES
SUBCHAPTER A. MINIMUM**

**STANDARDS AND
REGULATIONS
PART 7024. RELIGION**

*Current through December 15, 2014*

**7024.9 Exercise of religious beliefs by prisoners in segregation.**

Prisoners confined in administrative or punitive segregation shall not be prohibited from exercising their religious beliefs consistent with the requirements of section 7024.1(b) of this Part.
\

*HISTORICAL NOTE*

Sec. filed June 26, 1976; repealed, new filed May 31, 1988 eff. June 15, 1988.

© 2015 Thomson Reuters. No claim to original U.S. Govt. works.

9 NYCRR 7024.1, Policy.

*Exhibit "C"
of Exhibit "CH"
of Affidavit

Page 1

*40671 9 CRR-NY 7024.1

**OFFICIAL COMPILATION
OF CODES, RULES AND
REGULATIONS OF THE
STATE OF NEW YORK
TITLE 9. EXECUTIVE
DEPARTMENT
SUBTITLE AA. STATE
COMMISSION OF
CORRECTION
CHAPTER I. MINIMUM
STANDARDS AND
REGULATIONS FOR
MANAGEMENT OF COUNTY
JAILS AND PENITENTIARIES
SUBCHAPTER A. MINIMUM
STANDARDS AND
REGULATIONS
PART 7024. RELIGION**

*Current through December 15, 2014*

**7024.1 Policy.**

(a) Prisoners have an unrestricted right to hold any religious belief, and to be a member of any religious group or organization.

(b) Prisoners are entitled to exercise their religious beliefs in any manner that does not constitute a threat to the safety, security or good order of a local correctional facility, or the health of any individual.

(c) No person shall be permitted to proselytize or to seek to convert any prisoner without the consent of such prisoner, nor shall any prisoner be compelled to or dissuaded from exercising any religious belief.

(d) Equal status and protection shall be afforded all prisoners in the exercise of their religious beliefs, except when such exercise results in facility expenditures which are unreasonable or disproportionate to those extended to other prisoners for similar purposes.
\

*HISTORICAL NOTE*

Sec. filed June 26, 1976; repealed, new filed May 31, 1988 eff. June 15, 1988.

See: Defendant(s) Policy/Rule under: Religion pg. 15 of inmate handbook or exhibit "C", 4th paragraph therein as quote: "Behavior which threatens the safety, security and good order of the facility may result in restriction from congregated sercices. <u>In such cases arrangement will be made with the appropriate chaplain for a private service.</u>
And now, see plaintiff's grievance filed where plaintiff requested one on one private Islamic worship/exercise services and/or congregated worship/exercise services as a keeplock pre-trial detainee inmate...
However, this was not the case with plaintiff's.

Note: There was absolutely no restrictions placed on plaintiff's religious worship/ exercise by Jail Administration at anytime as to private services, as a disciplinary keeplock inmate nor, did plaintiff's disciplinary infraction relate to religion period.

© 2015 Thomson Reuters. No claim to original U.S. Govt. works.

C)   Render a finding of guilt or innocence on each individual charge.

D)   Render a decision on all sanctions to be imposed for each individual finding of guilt, based on the classification of violation and the inmates past record.

E)   Recall the accused and advise him of the decisions of the Committee, the basis for the decisions rendered and sanctions to be imposed for findings or pleas of guilty.

**IV KEEPLOCK STATUS**          **EXHIBIT "A"**

**PROCEDURE** The following procedures shall be in effect for all inmates on keeplock unless otherwise specified by the Superintendent.

1)   <u>Personal Property</u> - possession of authorized personal property with the exception of legal work, is suspended until the expiration of the keeplock. Personal property will be inventoried and stored for the duration in segregation.

2)   <u>Commissary</u> - Commissary orders will not be accepted, commissary will not be distributed and possession of commissary items are suspended until expiration of keeplock. (Exception; Keeplock commissary is available to replenish hygiene items and writing materials)

3)   <u>Packages</u> - Packages will be received at the facility but, will not be distributed until expiration of keeplock.

4)   <u>General Library</u> - General library attendance is suspended until expiration of keeplock.

5)   <u>Programs</u> - all program attendance, unless court ordered or mandated, is suspended until expiration of keeplock.

6)   <u>Religious Programs</u> - With the exception of attendance at one congregate worship service per week, attendance at non-mandated religious programs (i.e.: Bible Study, Choir Practice, etc.) is suspended until expiration of keeplock.

7)   <u>Facility Issued Property</u> - possession of facility issued property is limited to minimum requirement of the minimum standards.

8)   No restriction on religious texts or personal legal references.

9)   <u>Personal Hygiene & Supplies</u> - Limited to the minimum authorized by the facility.

10)   <u>Law Library</u> - if there is a threat to the safety, security or good order of the facility, attendance may be suspended, legal reference materials may be requested for use during  keep lock.

11)   <u>Telephones</u> - with the exception of Legal Calls, all telephone privileges are suspended until expiration of keeplock.

12)   <u>Meals</u> - There shall be no dietary restriction imposed by the facility.

13)   <u>Medical/Dental Services</u> - There shall be no Medical/Dental Services restriction imposed by the facility.

14)   <u>Shaves </u> - daily shaving is permitted at times determined by Housing Area Manager.

15)   <u>Correspondence</u> - If you are on  Keeplock housing status on Sunday, only <u>legitimately indigent</u> inmates' will be eligible to receive stationary and postage for two (2) one-ounce pieces of correspondence each week at facility expense.

All other inmate's will be permitted to purchase stationary and postage for two (2) one-ounce pieces of correspondence via the Commissary per week.  All unused materials and the pen will be collected by the Housing Area Manager at 1430.

17)   <u>Visits</u> - unless specifically ordered, there is no visiting restriction imposed.

18)   Exercise - You will be permitted to participate in scheduled physical exercise.  In addition too physical exercise you will be permitted a 15 minute release period for a shower and to clean your room.  The

scheduling of these periods are at the **DISCRETION** of the Housing Area Officer and/or Housing Area schedule or as ordered by Administration, Supervision or the Disciplinary Committee.

## V DISCIPLINARY APPEAL

A) At the conclusion of a Disciplinary hearing, the Inmate will be advised that the decision of the Committee may be appealed in writing to the Superintendent.
B) Appeal forms are available from the Housing Area Manager.
C) Appeal must be filed within 2 business days of the decision.

D) The Superintendent will review the hearing procedures and render a decision within 5 days of the receipt of an appeal.

E) A written copy of the decision will be forwarded to the inmate

F) The Superintendent may reduce, suspend all or part of the sanctions imposed but may not increase them.

## VI RECORDS

Records generated pursuant to a disciplinary hearing in which an inmate is found not guilty of charges brought against him, after either the hearing or an appeal, shall be expunged from the inmates records

## VII LOSS OF GOOD BEHAVIOR ALLOWANCE *(Sentenced Inmates)*

A) Loss of Good Behavior Allowance is subject to immediate Disciplinary Appeal or a restoration hearing procedure.

B) On or about 10 days prior to original outdate, an inmate who has lost good behavior allowance may submit a request for a restoration hearing.  Request to be made on an standard inmate request form and sent to the Correction Counselors Office.

C) On or about one day prior to the inmate's original outdate, the Disciplinary Committee shall convene and conduct a restoration hearing.

D) The inmate will appear, may speak in his own behalf and submit statements and present relevant evidence.

E) Upon completion of the review of all pertinent facts and information the Disciplinary Committee will render a decision to restore all, part or none of the lost good behavior allowance.

F) The inmate will be advised of the decision and provided a written copy of the Hearing Proceedings Report.

G) The decision of the Committee may be appealed, following Disciplinary Appeal Procedures.

H) Inmates who lose Goodtime with 10 days or less remaining on their sentence must file an appeal with the Superintendent.  The review of Lost Goodtime will not be handled by the Disciplinary Committee.

## VIII   SANCTION INTERRUPTION

Any Disciplinary Sanction which is interrupted due to the absence of the inmate from the facility for in excess of one (1) calendar day (custody transfer for court proceedings, hospital admission, etc.) for reasons other than expiration of sentence or detention period, shall be completed in total, as imposed by the Disciplinary Committee, upon the inmate's return to the facility.  All time served prior to the interruption shall be credited against the original sanction period.

The Administration, Presiding Officer or Disciplinary Committee may, as deemed appropriate and given any special or unusual circumstance, modify the remaining sanction period to be served.

## IX RE - ASSIGNMENT TO GENERAL HOUSING

Upon completion of Keeplock, reassignment to general housing will be based upon the inmates Classification.

## ADMINISTRATIVE SEGREGATION:

A form of separation from the general population, administered by the Superintendent for the purpose of providing

Tuesdays and Thursdays on the 11 a.m. – 7 a.m. shift.

3) Your order will arrive pre-bagged with your receipt attached. After checking your order, you will be required to sign this receipt acknowledging that you have received your order and that it is correct.

4) If you have a discrepancy in your order, NOTIFY THE OFFICER IMMEDIATELY AND DO NOT SIGN FOR THE ORDER.

5) You will receive the copy of the receipt form and the Officer will keep the signed original.  Also on this receipt is the current balance of funds left in your account.

6) Inmates in "keep-lock" will <u>only</u> be allowed to order a Keep Lock Commissary kit containing basic hygiene items and writing materials.

7) **Level 1** Inmates have a **$70. limit per commissary order;**
   **Level 2** inmates have a **$55. limit per commissary order;**
   **Level 3** Inmates have a **$40. limit per commissary order**.  Orders are taken twice per week.

8) Commissary items and/or prices may change.  If so, you will be notified via the kiosk.

9) If there is a mistake in your order, you will have to wait until the next business day for it to be corrected.

10) Your account balance is available on the unit kiosk.

**COMMISSARY ORDERING LEVELS:**
- Inmates restricted to cells are precluded from ordering microwavable/cooked items.
- Inmates Classified as Level 2 or 3 housed at the Holding Center will be allowed all Commissary items with the exception of radios.
- Inmates Classified as Level 2 or 3 housed at the Correctional Facility will be allowed to order all Commissary items.
- Inmates with dietary restrictions will not be allowed to order any food items on Commissary.
- Inmates in Disciplinary Segregation are restricted to ordering Keep Lock Commissary kits, which contain basic hygiene and writing materials.

Access Securepack is a program with the Commissary Company designed to allow family members and friends to send packages to inmates.  Single orders will be delivered via FED-EX.  Larger orders will be distributed with Commissary.

DAMAGES OR SHORTAGES MUST BE IDENTIFIED UPON DELIVERY TO YOU. BY PRESSING  ACCEPT , YOU ARE AGREEINGTHAT ANY COMMISSARY LEFT BY YOU IF NOT PICKED UP WITHIN (7) SEVEN DAYS OF YOUR RELEASE WILL BE DESTROYED. COMMISSARY ORDERS MUST BE PICKED UP AT THE FACILITY THAT YOU WERE HOUSED.

IF YOU BELIEVE YOU WILL BE RELEASED WITHIN THE NEXT 24 HOURS WE HIGHLY RECOMMEND YOU NOT SUBMITT THIS ORDER. BY ACCEPTING THIS SCREEN, I ACKNOWLEDGE AND UNDERSTAND THE TERMS OF COMMISSARY ORDERS AND I AUTHORIZE FUNDS TO BE DEDUCTED FROM MY TRUST ACCOUNT TO PAY FOR THIS ORDER



<u>MARRIAGES</u>:
1) Inmates may submit a written request to the Superintendent seeking permission to get married.

2) The authority to grant permission rests solely with the Superintendent.

3) Requests from inmates when the inmate or intended spouse is less than 18 years old, not a U.S. Citizen, will not be considered.

4) Inmates wishing to marry must comply with JMD rules, as follows:
   a) The inmate or his/her intended spouse will be **responsible for arranging for their own chaplain to marry them.**
   b) Once the arrangements have been made, the inmate will submit a *Inmate Request Slip* to the 1st

14

To set up an account with ICS the phone number is **1-888-888-8413.**

*HOW TO AVOID DISCONNECTION*
**Failure to comply with the following could cause calls from inmates to be disconnected:**
1)  **DON'T** attempt to make a 3-way call.
2)  **DON'T** try to transfer the call.
3)  **DON'T** put the inmate on hold.

4)  **DON'T** use or answer call waiting.
5)  **DON'T** use cordless phones.
6)  **DON'T** press numbers on the touch-tone pad during the call (on the inmate or called phone).
7)  **DON'T** stop the conversation for any length of time, even short pauses may result in disconnect.

Once a number has been blocked, only the person the telephone is listed to may un-block the number by calling **1-888-888-8413.**

A telephone is available in the event of a <u>verifiable</u> emergency *(death in the immediate family; immediate family member in hospital).*  These calls are for the local area only and at the discretion of the shift supervisor. You are to complete a *Inmate Request Slip* and forward it to the attention of a shift supervisor with the name of the party to be called and the reason for the request.

**AT NO TIME WILL WE ACCEPT TELEPHONE CALLS OR MESSAGES FOR ANY INMATE HOUSED IN THE ERIE COUNTY HOLDING CENTER OR ERIE COUNTY CORRECTIONAL FACILITY.**

Be courteous when talking with the telephone operators and be considerate of other inmates in your housing area waiting to use the telephone.  Try to limit calls to 15-minutes.

## AMERICANS WITH DISABILITIES POLICY:

Provisions are in place to ensure that reasonable accommodations are made within the framework of the Americans with Disabilities Act.  In order to provide housing, access to programs, personal hygiene assistance, fair and equitable disciplinary proceedings, medical services and an outlet for grievances for inmates with physical disabilities, provisions will be made for any inmate with a verified disability, on an individual basis, in accordance with their specific needs.

For the hearing and or speech impaired, podular housing with audible and visual emergency alarms, TDD telephone system and televisions with close caption capabilities are available.  Sign interpreters will be provided, upon inmate request, during disciplinary hearings, medical treatment, inmate grievance proceedings, booking, and classification or for those instances where an inmate's rights must be protected in accordance with the Americans with Disabilities Act.  Additional reasonable accommodations will be made for any inmate with a verifiable disability in accordance with their specific needs.

## TDD TELEPHONE SYSTEM

A TDD telephone system has been installed for those inmates who are hearing impaired and/or speech impaired.  The hours for use of this keyboard telephone: 9:00 am to 11:00 am and from 6:30 p.m. to 10:30 p.m.  Schedules for use of this telephone may vary due to facility operations.

## TELEVISION:

Televisions, with close caption capabilities, have been provided in all housing areas within the facility.  Normal hours of operation will be from 9:00 am to 11:00 p.m.  Any tampering with the television sets, including the cable connection, may result in suspension of television privileges in that housing area.
 **CHANNEL CHANGERS ARE CONSIDERED CONTRABAND AND ARE NOT ALLOWED.**  Possession of a channel changer will result in disciplinary charges filed.

## PERSONAL RADIOS at ECCF ONLY

Inmates may purchase a personal radio through the facility commissary. Use of radios is restricted.  Radios may only be used in individual rooms, on bunks in dorms and in the courtyard recreation area.  Radios may not be taken out of the housing unit.  Radios may not be used in dormitories after 2300 hours or before 0700 hours (11:00 p.m. to 7 a.m.)

## COMMISSARY:

A commissary service is available to all inmates housed in the JMD Facilities who have money in their accounts. Guidelines for ordering and receiving commissary:
   1)  Commissary Order forms are available on housing unit kiosks.
   2)  Commissary ordering days will be Mondays and Wednesdays.  You will receive your orders on

13

Deputy Superintendent. The *Inmate Request Slip* must include the name and telephone number of the intended spouse; and the name and telephone number of the Chaplain who will be performing the marriage.

   c)  We **recommend** that the inmate and the intended spouse attend premarital counseling session(s) conducted by **your Chaplain**.

   d)  The rules & regulations of the JMD will apply to all marriage counseling sessions.

   e)  Any lewd or prohibited behavior during any session may result in in-house disciplinary charges and/or non-contact counseling sessions.

5)  It is **your** responsibility to obtain a marriage license.

6)  Once all of the preliminaries have been arranged, a date, time, and room for the ceremony will be arranged by the Superintendent's Office.

7)  The JMD will provide the necessary witnesses to the marriage.

8)  Family members and friends will not be permitted to attend the ceremony.  There will be <u>NO</u> time allowed for post-marital relations/visit.

## RELIGION:



The Erie County Holding Center/Correctional Facility provides religious services for the Catholic, Muslim, and Protestant Faiths.  Chaplains of each of these listed faiths are on staff and available for consultation via *Inmate Request Slip*.  If you are a member of a religion other than those listed above and this religion is of a recognized community standard, send a *Inmate Request Slip* to the Superintendent's Office and every effort will be made to ensure that your religious tenets are met.

If you wish to change your religious denomination, send a *Inmate Request Slip* to the Chaplain of the religion you want to join.  The Chaplain will read your slips and if he/she approves the change, you will be allowed to attend services for that religion in the future.

### SCHEDULE OF RELIGIOUS SERVICES (Hours may be subject to change):

**HOLDING CENTER**
<u>Protestant</u>:  Sunday mornings  8:00 am.
<u>Catholic</u>:  Saturday evenings   7:00 p.m.
<u>Muslim Services</u>: Friday at 1:30 p.m.

**CORRECTIONAL FACILITY**
<u>Catholic Services</u>:  Saturday  at 7:00 a.m.
<u>Protestant Services</u>: Sunday & Tuesday at 7:00  a.m.
<u>Muslim</u>:  Friday afternoons  1:00 p.m.

To attend your service, you must sign up when the Officer compiles the list for that service (usually done the evening before the scheduled service).  Late add-ons will not be allowed.  When you attend a service, you must be quiet and respectful of the rights of others to worship.  Unruly behavior may result in your ejection from the service. Behavior which threatens the safety, security and good order of the facility may result in restriction from congregate services.  In such cases arrangement will be made with the appropriate chaplain for a private service.



## LIBRARY:

A library has been established by the Buffalo and Erie County Public Library System for the inmates while in the Holding Center/Correctional Facility.  If you choose to use the library, the following rules must be obeyed:

You may attend on those days when your housing area is scheduled.

You must conduct yourself in an orderly manner and be respectful of others using the library.  If you do not, your library privileges may be suspended.

You will be required to sign for any library books you take.  Your name and ICN will be used as identification.

All books will have a due date for their return and you will be required to either return or renew these books on your next visit to the library.

You will not be allowed to borrow additional books until the books currently borrowed are returned or renewed. Take care of the books in your possession and let others enjoy them too.

You will be held responsible for any book that is damaged or lost while signed out in your name.

When you are released or transferred from JMD facility, books must be returned to the library.

## LAW LIBRARY/LEGAL REFERENCE MATERIAL

A Law Library is maintained within ECHC and ECCF for your use while incarcerated.  Books and/or legal materials, (other than copies), will not be allowed to be removed from the law library.  If you want to use the law library, you can do so by sending an *Inmate Request Slip* to the Law Library.  You will be scheduled within one business day. If you cannot use this library appropriately, you will be sent back to your housing area.

The law library contains current legal materials and references as mandated,

New York State Correction Law Annotated;
New York State Penal Law Annotated;
New York State Criminal Procedure Law Annotated; and
Title 9 NYSCRR Subtitle AA (Minimum Standards)
Title 42, sections 1981-1988, and
Title 18, sections 4001-4321, of the United States Code Annotated;
A treatise with respect to:
    New York State Civil Practice Law and Rules;
    New York State Penal Law;
    New York State Criminal Procedure Law; and

Actions commenced pursuant to Title 42 of the United States Code, section 1983;

New York State case law digest dealing with:
    criminal law; and
    prisoners and prisons;
The United States and New York State Constitutions;
A treatise on prisoner's legal rights and remedies;

a legal dictionary;
form books for use in conjunction with:
    New York State Criminal Procedure Law;
    New York State Civil Practice Law and Rules; and

New York State Civil Practice Law and Rules Annotated;
A treatise on legal research.
United States Code Annotated;
New York State Consolidated Laws;
Reported decisions of the Courts of New York from 1960 to date;
Reported decisions of Federal District Courts, Federal Circuit Courts of Appeals, and the United States Supreme Court from 1960 to date;
A Federal case law digest;
A New York State case law digest;
Sheppard's; and
Federal and New York State legal forms.

If you need pertinent legal material, which is not contained in this library, inform the Law Library Officer and every effort will be made to obtain the desired material from an outside source.

You will be permitted to discuss and/or offer advice regarding your legal matters with other inmates while in the law library. However, pursuant to section 7031.3 of the NYS Commission of Correction Minimum Standards, "no inmate shall receive payment, benefit, or consideration in any form for providing assistance to another inmate."

**NOTE**:  *Any violation of this section may result in restriction of your law library rights.  Also, a law library trusty will be available to assist you in researching of needed legal materials or information.*

All inmates have daily access to legal materials upon request.  If you have any questions regarding the Legal Services provided in JMD Facilities, ask the Officer in your housing area or send an *Inmate Request Slip* to the Law Library Officer.

## LEGAL SERVICES:

1) Pre-trial Services are available to any inmate. Send an *Inmate Request Slip* to Pre-Trial Services for assistance in legal matters.
2) Attorney Conference/Visits: your attorney may visit you at any time that does not disrupt the orderly running of the facility, such as lockdowns for shift changes or during the serving of meals.
3) Notary Public: you can have your paperwork notarized by sending an *Inmate Request Slip* to the Law Library. The Law Library Officer is a licensed Commissioner of Deeds and will notarize your paperwork with one business day.
4) Copies:  copies of legal papers can be made by requesting it of the Officer in the Law Library.  There will be a $0.10 charge for each copy made.  At the time the copies are made, a receipt will be delivered to the Inmate Account Clerk for a deduction from your account.
5) Indigent Inmates: If you do not have the necessary funds at the time, the copies will still be made. The

**Mental Health Care:**

Mental Health Care is available to inmates.  Services include crisis intervention, counseling and psychiatric care. Involvement in mental health services is based on assessment results and need which is determined by the Forensic Mental Health Service. To refer yourself, fill out an *Inmate Request Form* or *Sick Call Slip* stating what the issue is you are seeking help for.  Place the form in the sick call mail box on your unit. Send it to the Forensic Mental Health Service.  Self-Referrals are sorted and people are seen based on need and urgency.

If you are in a mental health crisis, tell the deputy or officer on your housing unit.  The deputy/officer will assist you in getting help.

If you are receiving medications prescribed by the Forensic Mental Health Service and are suddenly released and need your medication, contact the **Forensic Mental Health Service at 858-8095** and a prescription will be ready for you to pick up at our office at **120 West Eagle Street** within 24 hours of contact. If you know when you will be released and your counselor is unaware, notify them of the release date using the *Inmate Request Form* or *Sick Call Slip* process.  You can also get medications using the **Discharge Medications** process described in **Medical Services** section of the **Inmate Hand Book**.

## INMATE  REQUEST SLIP:

This is a three-part NCR (no carbon required) form, which you are to use if you have questions concerning programs, charges, accounts, etc., which cannot be answered by the Housing Area Officer.

You are to fill out the request in the space marked, "*Request.*" The space marked, "*Disposition*" is for the response to your request.

Be brief and to the point in your request.  If you have any questions regarding the use of this form, ask your Housing Area Officer. Once completed, The Officer will read, sign, and date all *Inmate Request Slip*s and will forward all completed *Inmate Request Slip*s to the designated recipient for response.  Once answered, you will receive the yellow copy back with the answer to your request.

## CLOTHING

Upon admission to a JMD Facility you will be issued facility clothing
  a) The clothing issue for inmates shall include:
      i)   Two (2) shirts Orange color
      ii)  Two (2) Pr. of trousers Orange color
      iii) Female inmates will be permitted to wear brassieres.  Brassieres may be received in packages sent to the Facility. No Underwire or Bones.
      iv)  Two (2) Pr. of undergarments
      v)   Two (2)) Pr. white socks
      vi)  One (1) Pr. of suitable footwear when needed
      vii) One (1) Sweatshirt
  b) Inmates may be allowed to wear their own footwear and underwear upon admission to the facility provided that it meets Facility policy and guidelines.  All inmates shall be permitted to receive additional undergarments through packages **MAILED** to either of the Facilities contingent on the established criteria for packages as stated later in this handbook.
  c) Special or additional clothing shall be issued to those inmates assigned to such work assignments that require such clothing.  Special or additional clothing will be ordered by the work detail supervisor according to specific assignment.
  d) Jackets will be provided for exercise during inclement weather.
  e) All clothing and bedding items shall receive a thorough cleaning and, if necessary, repair and or disinfecting, prior to issue and/or storage.

## BEDDING

Upon admission to JMD Facilities, all inmates shall be provided with a clean issue of bedding as follows:
  a) Two (2) sheets
  b) One (1) Pillow
  c) One (1) Pillowcase  (will be eliminated as mattresses with pillows are circulated)
  d) One (1) Mattress
  e) One (1) Blanket

6

Morning medications are delivered to the housing areas beginning at 8:00 am.  If you are to receive a medication, it will be your responsibility to ensure that you are up at that time and respond to the Officer/Nurse when your name is called.

### MEDICATIONS WILL NOT BE LEFT ON THE HOUSING AREA OR WITH YOUR OFFICER.

When your name is called, you must report to the Medication Nurse fully clothed and with a glass of water. You must take your medications in front of the nurse. You will be requested by the nurse to open your mouth so the nurse can verify you have taken the medication. Failure to do so will be grounds for disciplinary action. The Nurse passing medications is not able to answer medical/medication questions while delivering medications.

If you are at court, clinic, etc., when medications are delivered, inform the Officer in your housing area.

If you have a question regarding your medications, the Medical Department is to be contacted using the *Inmate Sick Call Request Slip*. If the question is of an urgent nature, tell the housing area Officer and the Officer will contact the Medical Department for you.

## SICK CALL REQUEST

To attend sick call you must complete a *Sick Call Request Form* and place it in the sick call mail box on your unit.  If you have difficulty reading or writing you may ask the Officer for assistance in completing the request.  The Medical Department reviews the forms and those with an immediate medical need will be seen first.  Once a request form is turned in you do not need to send in multiple forms as you will be seen.

## DISCHARGE MEDICATIONS

Inmates who are on prescription medications and who have been in custody 30 days or longer may request a FREE 7 day supply of these medications upon discharge to serve as a bridge until they can be seen by their community provider. To get this FREE 7 day supply, call 716-858-6327 within 48 hours of release. If you know your release date, you can request this FREE 7 day supply on a sick call request slip.

You can pick up your medication from **Walgreens** located at Delaware Avenue and North Street. If you call before 4pm, it should be ready after 6:00 PM the same day. If you call after 4:00 PM, it will be ready the following day.

## MEDICAL RECORD REQUESTS

Your community medical provider can request a summary of your medical treatment while you were in jail. This including a list of the major health problems identified and treated. It also includes a list of your current medications and dosages. Your provider can obtain this by faxing a HIPPA compliant request form with your signature to (716) 858-8107. Your provider has these forms.

Physicians needing medical record information, in an emergent situation, can contact the Erie County Jail Physician by calling the Erie County department of Health at (716) 858-7690 (during regular business hours) and (716) 961-7898 (after regular business hours.)

## DETOXIFICATION PATIENTS

If you are released before completing drug detoxification, you will need IMMEDIATE medical care and medication. Call your Primary Physician for an appointment today. If this is not possible, go directly to the Erie County Medical Center Emergency Room. Ask to speak with the Chemical Dependency Counselor. They will be able to continue your detoxification treatment and provide additional services to help you stay drug free.

Resumption of your street drug use could now cause a potentially fatal overdose. **Do not use your previous street drug, it could kill you.**

Alcoholics Anonymous or Narcotic Anonymous offer programs to help you stay drug/alcohol free. **Take advantage of these valuable community resources.**

## TUBERCULOSIS TESTING

Did you have a tuberculosis screen (PPD test) during intake?  If you were released from custody before your test was read, call the Erie County Tuberculosis Control Program (608 William Street) at 858-2172.  You can get an appointment to have the test read. The test must be read within 72 hours.

### 1) Verbal Request/Complaint

Verbal requests or complaints may be made directly to the concerned Employee. If the employee has the authority to resolve the matter, immediate action may be taken. Such matters may also be directly referred to on-duty supervisory staff for resolution. If the matter cannot be resolved or must be forwarded to another person or office for resolution, staff will advise you how to proceed.

### 2) Written Request/Complaint

Matters that cannot be immediately resolved will be placed in writing on an *Inmate Request Slip* and forwarded to the appropriate person or office for review and consideration. A decision regarding the request or complaint will be made without undue delay.

## FORMAL PROCEDURES

You are encouraged to attempt to have problems and complaints resolved informally, however, you may file a formal written grievance at any time.

| NOTE: | Pursuant to Minimum Standards, dispositions, sanctions and surcharges from Disciplinary Hearings, administrative segregation housing decisions, issues outside the Superintendent's control and complaints pertaining to other inmates are not grievable. |
|---|---|

1) Grievance Forms will be available from the Housing Area Officer upon request.
   a) To File a Grievance: Complete the grievance form and submit to Housing Area Officer.

2) All formal written grievances or questions regarding filing or status of grievances shall be directed to the Facility Grievance Coordinator.

3) A grievance must be filed within 5 days of the date of the act or occurrence giving rise to the grievance. If you need assistance with the filing of a grievance, notify the Facility Grievance Coordinator and a staff member will be assigned to assist you.

4) After you have filed a formal grievance you will receive a written answer from the Grievance Coordinator within 5 business days.

5) If you are dissatisfied with the answer you have received from the Grievance Coordinator you may file an appeal to the Superintendent. The appeal must be filed within 2 business days. The Superintendent will review your grievance and issue a written answer within 5 business days.

6) If you are dissatisfied with the answer from the Superintendent, within 3 business days you may request to appeal your grievance to the Commission of Corrections. The Grievance Coordinator will forward your grievance and all information to the Commission of Corrections within 3 business days. You will be provided with a receipt indicating the date it was sent.

| NOTE: | Reprisals against inmates for the filing of a grievance is strictly prohibited by law. All allegations of staff retaliation, for the filing of a grievance, will be thoroughly investigated. |
|---|---|



7. The Citizens' Policy and Complaint review council will review the Grievance and issue a determination within 45 business days of receipt of a grievance. You will receive direct correspondence from the CPCRC regarding your grievance

# FUNERAL/DEATHBED VISITS

In order to provide inmates incarcerated at JMD Facilities the opportunity to visit family members when death is imminent and/or after death has occurred inmates may be permitted, at the discretion of the Superintendent, to visit the death bed and/or attend the wake or funeral of designated family members pursuant to the requirements of the section. Inmates will write an *Inmate Request Slip* to the Captain requesting the visit.

DEFINITIONS
For consistency in the application of this Policy and Procedure, the following definitions shall apply:

DEATH BED VISIT - shall mean visitation when death is imminent. Verification by physician of record is required. Visitation shall be coordinated with Hospital and shall be subject to Hospital policy and/or policy of the physician of record. For the purpose of maintaining proper security and to ensure the safety and security of the inmate and staff involved, death bed visits shall be limited to visits in recognized health

They must have working knowledge of legal research materials and must be able to read and write. These inmates are under the direct supervision of the Officer assigned to the Law Library. At no time will any inmate assigned to this work detail accept any form of compensation from the inmates they assist.

Additionally, Trustee assigned to this detail must sign and have an inmate sign if they assist with any legal work, a Consent to Exchange Legal Materials – Form #ECHC 101. This form is available in the Library and is for the Superintendents file.

**f)     Library:**

**ECCF –** Four (4) Male inmates assigned, Four (4) Female inmates assigned

This work assignment involves properly re-stocking books on the shelves, and providing whatever assistance is appropriate to the inmates using the library. Providing general housekeeping duties in the Library.

**g)     Recreation Porter:**

Two (2) inmates are assigned to this work detail. Their duties include the general maintenance and cleanliness of the exercise area.

This work detail runs five days per week, weekends and holidays off. The inmates assigned to this detail work the day shift and as an "as needed" basis on the afternoon shift.

These inmates are under the direct supervision of the Recreation Officers assigned to this area. Prior to returning to their housing area, these inmates are pat searched.

**h)     Housing Area Clean-Up Men or Porters – Linear/Podular/Dormitories:**

Inmates assigned to this work detail are housed in the area in which they work. They are not allowed access into any other area. These inmates are responsible for the general cleanliness of their housing areas, which includes garbage pickup, sweeping, Vacuum and washing the floors, showers etc.

**i)     Service Action Corp (ECCF):**

Eight (8) inmates assigned to two crews; These inmates are taken out into the community to work on improvement projects. They assist other government agencies with work projects.

**j)     Garage Crew (ECCF):**

Under the direction of the Department fleet Manager and mechanic, inmates work on department vehicles making auto repairs, tune-up oil changes etc.

**k)     Front Runner (ECCF):**

Three (3) Inmates are assigned to the work detail. The move paperwork through out the building. Are assigned to cleaning details in staff areas. Additional projects as assigned by the Operations Officer who is work assignment supervisor.

**l)     Painting Crew (ECHC) (ECCF):**

Inmates assigned to this crew work within the Facilities prepping and painting areas of the facility as required to keep area looking clean neat.

**m)     Floor Crew (ECCF):**

Inmates assigned to this crew sweep, mop, strip and wax corridors throughout the facility.

## INMATE GRIEVANCES

In compliance with Minimum Standards, this facility has established an inmate Grievance Program for the resolution of problems, complaints and a means of reporting misconduct. The Program consists of an informal procedure and a formal procedure.

*INFORMAL PROCEDURE*

(1).

**Affidavit in Support of "Bogus" and "Entrapment"**
**Policy/Rule under: Religion Pg. 15 of**
**Defendant's Inmate Handbook, Revised April 2015**

1.) Defendant's policy/rule # 6 of: Keeplock Status pg.31 of
**inmate handbook** and, **policy/rule under: Religion** pg.15 contradicts
each other. Policy/Rule # 6 as quote in part: **"With exception**
**of attendance at one congregated worship services per week"**
is a freedom of choice religious worship services policy/rule
and, **policy/rule** under: **Religion** is a controlled policy/rule
under the authority/jurisdiction of defendant which, gives an
individual of equal standings to the plaintiff the authority/
jurisdiction over the plaintiff to decide for the plaintiff
whether plaintiff can or can not be accepted to join a
religion...and if, plaintiff can or can not attend a religious
worship service of plaintiff's faith and choice "Islam" and,
as a religious worship right of the plaintiff's (Freedom of
Religion).

Please see: **"Face Sheet"** document of plaintiff's inmate
profile/information sheet document at Erie County Correctional
Facility where sergeant Hayden documented on **"Face Sheet"** June
12, 2015 approval for plaintiff's memebership as a muslim and
also, approval for plaintiff's attendance at muslim weekly
religious worship services. Seventy-two (72) day(s) or ten (10)
week(s) elapsed before either Erie County Jail Facilities
attempted to meet plaintiff's religious tenet(s) as per jail's
policy/rule under: **Religion** pg.15 of defendant's inmate handbook
, revised April 2015. **Still no response from Imam muslim chaplain**
**in person nor, in writing in minimum from April 8, 2015 till**
**July 13, 2015..., contrary to policy/rule under: Religion of**
**defendant's...**

The action(s) of sergeant Hayden's religious approval(s)
is totally contrary to policy/rule under: **Religion** pg. 15 of
defendant's inmate handbook, revised April 2015 and, the
action(s) of sergeant Hayden's is totally contrary to grievance
coordinator's grievance resolution(s) rendered June 2, 2015 **and,**
**in specific June 6, 2015...**

to plaintiff's grievance #15RG-099 **(see attached grievance)
and, see grievance coordinator's grievance response(s) in all...**

There is a separation between government and church in minimum here to the above action(s) of sergeant Hayden's religious approval(s) contrary to policy/rule under: **Religion** pg. 15 of defendant's inmate handbook, revised April 2015 **and, as claimed** erroneous-**ly in grievance coordinator's grievance response of June 6, 2015...**

This jail's policy/rule under: **Religion** was used against plaintiff by defendant's policy/rule to sabotage or to deprive plaintiff deliberately and intentionally a total of ninety-seven (97) day(s) or fourteen (14) week(s) of religious worship services; religious choice; religious and civil right(s).

Thus, the defendant's jail policy/rule under: **Religion** were and is a direct violation of plaintiff's religious and civil right(s).

2.) Defendant's policy/rule under: **Religion** pg.15 of defendant's inmate handbook, revised April 2015 is a **"Bogus"** policy/rule **(in whole)** also, the policy/rule were used as an **"Entrapment Tool"** by government official(s) of defendant to deprive plaintiff deliberately and intentionally a total of ninety-seven (97) day(s) or fourteen (14) week(s) of religious worship services and of plaintiff's religious and civil right(s)...

There is a separation between government and church in minimum here of the action(s) of government official(s) deprivation(s) as based upon the defendant's policy/rule Under: **Religion...**

Please see: **"Face Sheet" document of inmate/profile information sheet of plaintiff's where sergeant Hayden authorized documented on "Face Sheet" June 12, 2015 approval for plaintiff's** memebership as a muslim and, approval for plaintiff's attendance at weekly religious services.

Seventy-two (72) day(s) or ten (10) week(s) elapsed before either Erie County Jail Facilities attempted to meet plaintiff's religious tenet(s) as per jail's policy/rule under: **Religion** pg. 15 of defendant's inmate handbook, revised, April 2015.

Still no response from Imam muslim chaplain in person nor, in writing in minimum from April 8, 2015 contrary to policy/rule under: **Religion.**

The action(s) of sergeant Hayden's religious approval(s) is totally
contrary to grievance coordinator's grievance resolution rendered
on June 2, 2015 and, totally un-orthodox and contrary to
grievance coordinator's grievance response rendered June 6, 2015
pursuant to: 9NYCRR7032.4(h) re: Program requirements as quote
"issues that are outside the authority of chief administrative
officer to control" response(s) of grievance coordinator's...
See attached grievance of plaintiff and grievance coordinator's
frivolous response(s) in all...

3.) Of the three (3) faith(s) of religion(s) offered at Erie
County Holding Center/Erie County Correctional Facility of:
Catholic; Protestant and Muslim, there is no official employed
chaplain(s) of either faith employed by County of Erie at Erie
County Holding Center/Erie County Correctional Facility nor,
is there an official employed or un-employed chaplain on premises
daily as per jail's policy/rule under: Religion pg. 15 of
defendant's inmate handbook, revised April 2015 at either
facility nor, is there a chaplain for Consultation as per jail's
policy/rule under:Religion that plaintiff's religious tenet(s)
were met by jail's administration or by that of a muslim Imam
chaplain as plaintiff being a pre-trial detainee keeplock
inmate or not...these minimum requirements by State Regulation(s)
was not met...

As of June 19, 2015 a fact was brought to the attention
of plaintiff by other muslim inmate(s) at so-called muslim
worship/exercise services that, there has not been a muslim
Imam chaplain as per jail's policy/rule under: Religion at Erie
County Correctional Facility in a year or better for religious
tenet(s) of muslim inmate(s) and that of the plaintiff's as
per jail's policy/rule under: Religion and, as per New York
State Minimum Standards...And, as plaintiff being a muslim faith inmate...
_____Nor, was there a muslim inmate qualified to conduct a (al-
Jumah) religious worship services, 2.) nor, was

authorization attempted to be given by jail administration to
a muslim inmate to attempt to conduct a (Al-Jumuah) muslim
religious worship services, 3.) Nor, were Holy Koran(s) provided
by jail administration that a (Al-Jumuah) religious worship
services could attempted to be conducted, 4.) Nor, could a muslim
Holy Koran e.g. (bible study) be conducted as other faith(s)
religious tenet(s) were met by jail administration as per jail's
policy/rule under: Religion pg. 15 of defendant's inmate handbook
, revised April 2015...

Please see attached: Sworn Affidavit of Muslim Inmate(s)
with Institutional Number(s)/Witnesses of: No Muslim Imam
Chaplain to conduct (Al-Jumuah) muslim religious worship/exercise
in a year or better at Erie County Correctional Facility.


4.) Plaintiff filed grievance on June 21, 2015 re: No Muslim
Imam Chaplain with no response in minimum from 1.) grievance
coordinator, 2.) sergeant(s) or 3.) chief administartor as per
New York State MInimum Standards re: grievance filed June 21,
2015 of: No Muslim Imam Chaplain.

See attached: Formal Grievance Procedure Policy/Rule pg.
22, 1 thru 7 of Jail's Inmate Handbook, Revised April 2015.
The above un-othordox un-concern of defendant's administration
is totally contrary as per jail's policy/rule under: Religion
and, as per New York State Minimum Standards and, is violation
of plaintiff's religious worship services and civil right(s)
of plaintiff's as a  pre-trial detainee inmate...


The so-called muslim religious services at Erie County
Correctional Facility is just a bunch of black men(s) thrown
in a room without a Imam Chaplain to conduct 1.) religious exercise/
worship services as per jail's policy/rule under: Religion Nor,
2.) for muslim inmate(s) to recieve religious text(s) as per
jail's policy/rule under: 1V Keeplock Status pg. 31 # 8 and
as other faith religion(s) at Erie County Correctional Facility/
Erie County Holding Center, both facilities of same entity and
of defendant Howard, Sheriff.and, County of Erie as "person".

\*\*\*   5.) Chaplain(s) have no official in-house mail box as per jail's
policy/rule under: Religion pg. 15 of defendant's inmate
handbook, revised April 2015. All correspondence to chaplain(s)
by inmate via inmate request slip(s) to chaplain(s) are recieved/
intervene/intercepted by government official(s) of defendant's.
At that point, inmate(s) request slip(s) to chaplain(s) are
decided upon for religious approval or dis-approval by jail
official(s) without presence of either faith chaplain(s), totally
contrary to jail's policy/rule under: Religion pg. 15 of
defendant's inmate handbook, revised April 2015.

Please see: "Face Sheet" document of (Inmate profile/
information sheet) document at Erie County Correctional Facility
and, where sergeant Hayden documented on Face Sheet June 12,
2015 approval for plaintiff's memebership as muslim and also,
approval for plaintiff's attendance at weekly muslim worship
services.

The action of sergeant Hayden's  religious approval(s) is
totally contrary to policy/rule under: Religion pg. 15 of
defendant's inmate handbook, revised April 2015.

There is a separation between government and church in
minimum here...Also, the action(s) of sergeant Hayden's religious
approval(s) is and was totally contrary to grievance
coordinator's grievance resolution rendered June 2, 2015 and June 6, 2015
re: plaintiff's grievance #15RG-099 of the plaintiff's.

Print out time on Face Sheet document is June 4, 2015 at
17:38 hour and, printed prior to plaintiff's tranfer June 4,
2015 at 11:00 p.m. to Erie County Correctional Facility.

Plaintiff will make demand for discovery re: Face Sheet
Document (inmate profile/information sheet of inmate). Document
in inmate(s) file records at Erie County Correctional Facility.

6.) Chaplain(s) are only in facility on their volunteer day
and hour of their religious worship services period and, for
statisfying New York State Minimum Standards for defendant...This

requirement of New York State Minimum Standards was not met in
minimum...as to muslim faith inmate(s) oppose to other faith religion(s)
afforded.

7.) Nor, does chaplain(s) have an official chaplain(s) office
within either facility for <u>consultation</u> <u>as</u> <u>per</u> <u>jail's</u> <u>policy/rule</u>
under: Religion pg.15 of defendant's inmate handbook,revised
April 2015 and for, recieving of inmate(s) request slip(s)
directed to care of: Chaplain(s).

8.) Chaplain(s) arrival and exit of either facility are always
under escort. Chaplain(s) are not permitted to travel un-escorted
within facilities nor, is <u>consultation</u> permitted as per jail's
policy/rule under: Religion pg. 15 of defendant's inmate handbook
, revised April 2015, <u>consultation</u> not permitted with an inmate
outside of chaplain(s) religious day and hour of worship period.
Plaintiff as a keeplock inmate was not afforded this minimum
standard. This is totally contrary to jail's policy/rule under:
Religion of: <u>consultation.</u>

<u>9.)</u> <u>As</u> <u>confirmation</u> <u>of</u> <u>no</u> <u>official</u> <u>employed</u> <u>or</u> <u>un-empolyed</u>
<u>chaplain(s)</u> for inmate(s) religious tenet(s) as per jail's
policy/rule under: religion pg. 15 of defendant's inmate handbook
, revised April 2015. See attached: Jail's policy/rule under: Marriage
pg. 14 of inmate handbook, revised April 2015 of : No on duty
chaplain(s) at either facilities.

    Thus, the policy/rule under: Religion pg. 15 of defendant's
inmate handbook, revised April 2015 is "Bogus" (in whole) and,
a "Entrapment Tool" used by defendant to deliberately and
intentionally deprive plaintiff a total of ninety-seven (97)
day(s) or fourteen (14) week(s) of religious worship/exercise.

    The policy/rule under: Religion is clearly prejuduicial
and a discriminative policy/rule under: Religion. The policy/rule
    under: Religion,directly violated all of plaintiff's
religious tenet(s); religious choice; religious text(s);
religious consultation(s); religious worship services; religious

religious right(s) and, plaintiff's civil right(s).

*** 10.) Lastly, plaintiff was prejudiced and discriminated against
by Erie County jail official(s) for plaintiff spitting on a
deputy sheriff official at Erie County Holding Center, after being provoked.
    Plaintiff sentenced one-hunderd (100) day(s) keeplock; one
(1) hour loss of visit(s); twenty-five $25.00 dollars
        ─ sur-charge and, charged in criminal court with court
sur-charges.   **Note: There was absolutely no restrictions placed on plaintiff's religious
worship/exercise by Jail Administration at anytime.** as to private services as a disciplinary
keeplock inmate. Disciplinary infraction did not relate to religion...

    I declare under the penalty of perjury that the foregoing
is true and correct. to the best of my knowledge, information
and belief.


Dated ___9/10/15___                    _____
                                       Randolph Scott 15-B-2127



Sworn to before me this __10^TH_____ day of _SEPTEMBER_

_____                20 _15_____
    Notary Public


JOHN A MALKOWSKI
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA6315048
Qualified in Erie County
My Commission Expires November 27, 2018

(1).

A. SECOND CLAIM : on date (date of the incident) April 8 to July 6, 2015.

Defendants (give name and position held of each defendant involved in this incident) Timothy B. Howard, Sheriff and, County of Erie as "person".

Did the following to me: Plaintiff as a pre-trial detainee keep-lock inmate was deliberately and intentionally denied/deprived/stripped as per jail's policy/rule of Erie County Jail Facilities a total of ninety (90) day(s) or thirteen (13) week (s) of all authorized and unauthorized reading material (s) of: books; magazines and newspapers, etc. etc. with exception of legal materials as a keeplock inmate. Cause of Action/Claim: Denied Access to Jail's Library and/or Library prohibited in segregated keeplock unit as a keeplock inmate.

This deprivation of reading materials were committed upon plaintiff's entry April 7, 2015 to segregated keeplock unit. The defendant(s) actions where unorthodox and contrary to: Title 9 "Management of County Jail's" Part 7679 (c) and (d) therein of: Access to Library Services for General Population and, For Segregated Keeplock Unit Inmates...

3.) Defendant(s) jail policy/rule under: 1V keeplock Status pg. 31 of # 4 as quote: "General Library Attendance is Suspended Until Expiration of Keeplock".

4.) Defendant(s) policy/rule under: 1V Keeplock Status pg. 31 of: # 1 and # 4 of defendant's inmate handbook, revised April 2015 inflicted : Cruel and Unusual Punishment as a pre-trial detainee keeplock inmate...

Even if plaintiff were recieving payed subscription(s) for: books; magazines or newspapers, etc. etc., the defendant(s) policy/rule under: 1V Keeplock Status pg. 31 of # 1 and # 4 of "Personal Property" of defendant(s) inmate handbook, revised April 2015

Next pg.

O.L in

(2).

would had deprived plaintiff of such reading materials and, forfeiture of plaintiff's money payed for such subscriptions.

See attached: **Affidavit in Support of Claim # 2 and, Exhibit(s) of: Title 9 "Management for County Jails," Part 7679 re: Access to Library for All Inmates. and, Exhibit(s) of: 1V Keeplock Status Policy/Rule pg. 31 of: # 1 and, # 4 of defendant's Inmate H Handbook, Revised April 2015.** See also: Defendant's Policy/Rule under: Authorized Personal Property and Restricted Quanities of: books; magazines and newspapers of pg. 10 of Defendant's Inmate Handbook, Revised April 2015, a exhibit enclosed herein. See also attached: Grievance of plaintiff's along with grievance coordinator's response(s) that administrative remedies exhausted. **See pg. 3 for exhaustion of Administrative Remedies.**

Plaintiff further alleges against defendant(s):

1.) Defendant's un-constitutional tortious acts done in violation pursuant to State Law, ordinance or regulation of: **Title 9 "management of County Jails," Part 7679. (c) and (d) Access for Library Services for General Population and,** For segregated Keeplock Inmates.

2.) Defendant(s) failed to promulgate adequte policy in minimum re: **Access to Library for General Population and, Segregated Keeplock Inmates pursuant to Title 9 "Management of County Jails"** Part 7679. (c) and (d) thereof re: **Access to Library and, available books.**

3.) Defendant(s) has a pratice of not enforcing the policy by regulations pursuant to **State Law of Ttile 9 "Management of County Facilities" of Part 7679 (c) and (d) thereof** pertaining to segregated keeplock inmates.

4.) Defendant(s) unconstitutional tortious practices had been brought to the attention of: Chief Administrator/Supervisior Officials by plaintiff via inmate request slip(s). **Proof by inmate request slip(s) documentation(s)** along with grievance filed.

(3).

5.) County employees were untrained by virtue of: **County Policy and State Law Regulations and with condoned usage theories of the County...**

Erie County Holding Center/Erie County Correctional Facility for year(s) has had a history of unconstutional tortious conduct/ practices usage under defendant(s), **Timothy B. Howard, Sheriff and County of Erie as "person".**

**There is presently a number of "Tort Claim(s)"before the Court's against defendant(s) of similarity as in this instance...**

6.) Employees **past** and present acts/practices of tortious conduct pursuant to usage of the county depriving fundamental rights of plaintiff.

7.) Plaintiff as a pre-trial detainee was deliberately and intentionally deprived of **Due Process and, Equal Protection of the Law.**

**8.) Defendant(s) acted "under color of any law".**

9.) lastly, plaintiff was discriminated and prejudicied against by custom for plaintiff spitting on a Erie County Sheriff Deputy official on **April 2, 2015 at 12:15 a.m.. Plaintiff arrested March 31, 2015 and on April 7, 2015** plaintiff placed in keeplock unit under a one-hundred (100) days disciplinary keeplock sentence. Plaintiff was provoked at spitting on deputy.

## Exhaustion of Your Administrative Remedies for this Claim

Did you grieve or appeal this claim ? **Yes**  If so, what was the results ?

Plaintiff on May 29, 2015 was given a written response **stating that access to libaray in keeplock unit was not a privilege, nor a right.**
See attached: grievance and so-called grievance resolution which

(4).

plaintiff disagreed with grievance resolution.

Did you appeal that decision ?   **Yes**   If so, what was the
results ?

   Plaintiff on June 8, 2015 appealed to Chief Administrator
Evans at Erie County Correctional Facility after transfered
from Erie County Holding Center June 4, 2015.

   However, plaintiff received absolutely no response back
to plaintiff's appeal to Chief Administrator Evans at Erie County
Correctional Facility re: grievance # 15R-044 originally filed
on **May 29, 2015** at Erie County Holding Center Jail. **Thus, forfeiture
of plaintiff's exhaustion of administrative remedies.**

---

The constitutional basis for this claim under 42 USC 1983
is: 1st; 5th; 8th and 14th Admendments.

See attached grievance and response(s) to grievance.

---

Do you want jury trial ?   **No.**

---

### Relief Sought

   The relief I am seeking for this claim: **Monetary of Fifty
thousand $ 50,000.00 dollars and, punitive damages upon the
discretion of the Court.**

*5/29/15  Inmate is going trial and unusual punishment Bed w/out Holeice*

ATTACH #2
CLAIM #2



# New York State Commission of Correction

## Grievance Form Part I

**Facility:** Erie County Sheriff's Office—Jail Management Div.

☒ Holding Center  NY014023C  1403

☐ Correctional Facility  NY014013C  1402

☐ Yankee Compound  NY011043C  1410

**Housing Location:** Gulf EAST # 39

**Grievance #:** 136-014

*FACILITY ASSIGNS THIS NUMBER*

**Inmate's Name:** RANDOLPH R. SCOTT

**ICN #:** 34427

### Brief Description of the Grievance (Completed by the Grievant) :

**Number of Additional Sheets Attached (0)**

THE WRITER HAS BEEN IN SEGREGATION UNIT "Gulf EAST" of ERIE Co. HOLDING CENTER TWO (2) MONTH(S) DETAINED WITHOUT ACCESS TO JAIL LIBRARY FOR INMATE(S) NOR DOES LIBRARY COME TO SEGREGATION UNIT FOR INMATE(S) ACCESS TO READING MATERIALS OF BOOKS NOR MAGAZINE(S). ACCESS TO LIBRARY IS PROHIBITED IN SEGREGATION UNIT AT ERIE Co. HOLDING CENTER. THE WRITER HAS BEEN SENTENCED TO 1(100) DAY(S) IN SEGREGATION WITHOUT READING MATERIAL(S). THIS IS CRUEL AND UNUSAL PUNISHMENT. THE WRITER WILL BE FILING 1983 AND (OVER)

### Action Requested by the Grievant (Completed by the Grievant) :

**Number of Additional Sheets Attached (2)**

REQUEST ACCESS TO JAIL LIBRARY OR LIBARRY BE BROUGHT TO THE THE WRITER OR BE GRANTED A TIME OUT FROM THIS CRUEL AND UNUSAL PUNISHMENT DEFINED BY LAW AND/OR REMOVED FROM FACILITY AT ONCE.

MAY THE WRITER HAVE RESPONSE AND COPY(S) RECEIVED BY THE WRITER OF THIS FILING THANK YOU. (RENDERED TO)

**Grievant Signature:** R. R. Scott  **Date/Time Submitted:** 5/29/15

**Receiving Staff Signature:** _[signature]_  B. Usher  **Date/Time Submitted:** 5/29/15  2015

### Summary of Facility Staff attempts to resolve (Attach Relevant Documentation) :

**Number of Additional Sheets Attached (  )**

Inmate informed by this deputy that the privelege of access to public library books (available on unit) is followed per facility policy. Books on unit offered to inmate. Dept. use of GENERAL LIBRARY is suspended during keeplock status. It inhibited custody held. Reviewed w/ 6/3/15

☐ **Language Barrier, List language** _____ ; **Name of Interpreter and affiliation** _____

☐ **Cognitive Disability Barrier, Low literacy; If box is checked, what steps were taken to assist grievant? (List above)**

**Officer/Supervisor Signature:** _[signature]_  B. Usher  **Date/Time:** 5/29/15  2040

(  ) **I agree to accept the informal resolution to my Grievance**

(☒) **I do not agree to accept the informal resolution to my Grievance**

**Grievant Signature:** R. R. Scott  **Date/Time Submitted:** 5/29/15

**Forward to the Grievance Coodinator:** *Grievance must be forwarded to the Grievance Coordinator within 24 hours of submission*

**Officer/Supervisor Signature:** Sgt. Reynolds  Reynolds  **Date/Time:** 5/29/15  2045

**Received by the Grievance Coodinator:**

**Grievance Coordinator Signature:** _[signature]_  **Date/Time:** 6/1/15  07..

# ERIE COUNTY SHERIFF'S OFFICE



## JAIL MANAGEMENT DIVISION

6/6/2015

**TO:  Scott, Randolph   34427**                    **G EA 39**

**RE:  Grievance 15G-004**        **Date Grievance Submitted:**     **5/29/2015**

Please read the decision of the Grievance Coordinator

Choose to   accept   or    appeal    by checking the appropriate box

Sign the form.
Please keep your copy of the grievance.

You must return the signed form within business two days  by    6/8/2015            or
the grievance will be closed.

Thank you,


Sgt. McAndrew

Grievance Coordinator

\*41327 9 CRR-NY 7679.5

**OFFICIAL COMPILATION OF CODES, RULES AND REGULATIONS OF THE STATE OF NEW YORK TITLE 9. EXECUTIVE DEPARTMENT SUBTITLE AA. STATE COMMISSION OF CORRECTION CHAPTER V. MINIMUM STANDARDS AND REGULATIONS FOR MANAGEMENT OF STATE CORRECTIONAL FACILITIES PART 7679. LIBRARY SERVICES**

*Current through December 15, 2014*

**7679.5 Accessibility to general institutional library services.**

(a)  In  facilities  that  maintain  a  general institutional  library,  inmates  shall  have  the opportunity to access the library service at least once a week.

(b) Such access shall include the opportunity to directly use and study in the library.

(c) If inmates do not have direct access to the general institutional library, and such access has not been limited or removed as a result of a disciplinary  action,  the  facility  shall  make provisions  for  reading  material  requests  and delivery and pickup of library materials on a weekly basis at designated areas or, if such areas are not accessible to the inmates, at their housing units.

(d) A current list of library materials accessible to inmates specified in subdivision (c) of this section  and  a  description  of  services  provided by the library shall be made available to all inmates who  do  not  have  direct  access  to  the  general institutional library.
\

*HISTORICAL NOTE*

**Sec. filed April 28, 1987 eff. May 19, 1987.**

© 2015 Thomson Reuters. No claim to original U.S. Govt. works.

C) Render a finding of guilt or innocence on each individual charge.

D) Render a decision on all sanctions to be imposed for each individual finding of guilt, based on the classification of violation and the inmates past record.

E) Recall the accused and advise him of the decisions of the Committee, the basis for the decisions rendered and sanctions to be imposed for findings or pleas of guilty.

**IV KEEPLOCK STATUS** 

**PROCEDURE** The following procedures shall be in effect for all inmates on keeplock unless otherwise specified by the Superintendent.

1) Personal Property - possession of authorized personal property with the exception of legal work, is suspended until the expiration of the keeplock. Personal property will be inventoried and stored for the duration in segregation.

2) Commissary - Commissary orders will not be accepted, commissary will not be distributed and possession of commissary items are suspended until expiration of keeplock. (Exception; Keeplock commissary is available to replenish hygiene items and writing materials)

3) Packages - Packages will be received at the facility but, will not be distributed until expiration of keeplock.

4) 

5) Programs - all program attendance, unless court ordered or mandated, is suspended until expiration of keeplock.

6) Religious Programs - With the exception of attendance at one congregate worship service per week, attendance at non-mandated religious programs (i.e.: Bible Study, Choir Practice, etc.) is suspended until expiration of keeplock.

7) Facility Issued Property - possession of facility issued property is limited to minimum requirement of the minimum standards.

8) No restriction on religious texts or personal legal references.

9) Personal Hygiene & Supplies - Limited to the minimum authorized by the facility.

10) Law Library - if there is a threat to the safety, security or good order of the facility, attendance may be suspended, legal reference materials may be requested for use during keep lock.

11) Telephones - with the exception of Legal Calls, all telephone privileges are suspended until expiration of keeplock.

12) Meals - There shall be no dietary restriction imposed by the facility.

13) Medical/Dental Services - There shall be no Medical/Dental Services restriction imposed by the facility.

14) Shaves - daily shaving is permitted at times determined by Housing Area Manager.

15) Correspondence - If you are on Keeplock housing status on Sunday, only legitimately indigent inmates' will be eligible to receive stationary and postage for two (2) one-ounce pieces of correspondence each week at facility expense.

All other inmate's will be permitted to purchase stationary and postage for two (2) one-ounce pieces of correspondence via the Commissary per week. All unused materials and the pen will be collected by the Housing Area Manager at 1430.

17) Visits - unless specifically ordered, there is no visiting restriction imposed.

18) Exercise - You will be permitted to participate in scheduled physical exercise. In addition too physical exercise you will be permitted a 15 minute release period for a shower and to clean your room. The

scheduling of these periods are at the **DISCRETION** of the Housing Area Officer and/or Housing Area schedule or as ordered by Administration, Supervision or the Disciplinary Committee.

## V DISCIPLINARY APPEAL

A)   At the conclusion of a Disciplinary hearing, the Inmate will be advised that the decision of the Committee may be appealed in writing to the Superintendent.

B)   Appeal forms are available from the Housing Area Manager.

C)   Appeal must be filed within 2 business days of the decision.

D)   The Superintendent will review the hearing procedures and render a decision within 5 days of the receipt of an appeal.

E)   A written copy of the decision will be forwarded to the inmate

F)   The Superintendent may reduce, suspend all or part of the sanctions imposed but may not increase them.

## VI RECORDS

Records generated pursuant to a disciplinary hearing in which an inmate is found not guilty of charges brought against him, after either the hearing or an appeal, shall be expunged from the inmates records

## VII LOSS OF GOOD BEHAVIOR ALLOWANCE *(Sentenced Inmates)*

A)   Loss of Good Behavior Allowance is subject to immediate Disciplinary Appeal or a restoration hearing procedure.

B)   On or about 10 days prior to original outdate, an inmate who has lost good behavior allowance may submit a request for a restoration hearing.  Request to be made on an standard inmate request form and sent to the Correction Counselors Office.

C)   On or about one day prior to the inmate's original outdate, the Disciplinary Committee shall convene and conduct a restoration hearing.

D)   The inmate will appear, may speak in his own behalf and submit statements and present relevant evidence.

E)   Upon completion of the review of all pertinent facts and information the Disciplinary Committee will render a decision to restore all, part or none of the lost good behavior allowance.

F)   The inmate will be advised of the decision and provided a written copy of the Hearing Proceedings Report.

G)   The decision of the Committee may be appealed, following Disciplinary Appeal Procedures.

H)   Inmates who lose Goodtime with 10 days or less remaining on their sentence must file an appeal with the Superintendent.  The review of Lost Goodtime will not be handled by the Disciplinary Committee.

## VIII   SANCTION INTERRUPTION

Any Disciplinary Sanction which is interrupted due to the absence of the inmate from the facility for in excess of one (1) calendar day (custody transfer for court proceedings, hospital admission, etc.) for reasons other than expiration of sentence or detention period, shall be completed in total, as imposed by the Disciplinary Committee, upon the inmate's return to the facility.  All time served prior to the interruption shall be credited against the original sanction period.

The Administration, Presiding Officer or Disciplinary Committee may, as deemed appropriate and given any special or unusual circumstance, modify the remaining sanction period to be served.

## IX RE - ASSIGNMENT TO GENERAL HOUSING

Upon completion of Keeplock, reassignment to general housing will be based upon the inmates Classification.

## ADMINISTRATIVE SEGREGATION:

A form of separation from the general population, administered by the Superintendent for the purpose of providing

**THE FOLLOWING ITEMS WILL NOT BE ACCEPTED AT THE FACILITY OR THROUGH THE MAIL:** *Personal checks, nude personal photographs, musical greeting cards, oversized greeting cards, plastic-type cards, telephone calling cards, personal identification cards, sonograms (plastic x-ray type),* **Polaroid's** *(whole or altered), more than ten (10) photo-graphs, medicine, personal hygiene items such as deodorant, hair products, combs, brushes, toothpaste, tooth- brush, shampoo, soap, washcloths, towels, cosmetics, metal or wooden crosses, chains, neck-laces, medallions, rings, watches, brace- lets, stamps, writing paper, envelopes, pens, pencils, crayons, colored pencils, pantyhose, metal objects, plastic objects, glue substances, decals, stickers, artwork: beaded, painted, glued, stringed, etc., belts, food items, candy, cologne or perfume, cassette tapes, electrical items such as radios, tape players, televisions, lottery tickets, hair, tobacco products.*

<u>ADDITIONAL POSTAGE:</u>

Any mail item requiring additional postage must be sent through the law library. You must submit a request to the law library and bring your additional postage mail item (oversized, certified, return receipt, etc.) with you to the law library. The law library Officer will compile the additional postage calculation and charge your account accordingly. Additional postage items will be sent through the U.S. Post Office following the **OUTGOING MAIL** procedures stated above via the Law Library Mailbox.

## PROPERTY *(At the time of Arrest)*

Once arrested, any property in your possession at the time of your arrest will be inventoried and receipted by the arresting Law Enforcement Agency. If you were arrested by the Buffalo Police Department and are released from Court after your arraignment, you may pick up your property at 121 West Eagle Street. If you are detained and sent to the Erie County Holding Center, you will have to have someone pick up your property and deposit your money into your commissary account at the Holding Center. At no time will any money from your account be released to anyone outside of the Holding Center unless authorized by the Superintendent.

## EXCESS PROPERTY

Property will be held for **30 days** after release from either facility. If it is not claimed, it will then be sent for auction. When you are released, pick up your property or sign a release for your property to be picked up.

## AUTHORIZED PERSONAL PROPERTY        EXHIBIT "B"

Inmates may possess facility issued and personal property in their assigned rooms. The accumulation of both facility issued and personal property is limited to that property which can be neatly stored in the storage bin. You will not be permitted to have any storage container not issued by the facility. **It is your responsibility to notify staff when you have excess property to be removed from your cell.**

## RESTRICTED QUANTITIES

The following property is restricted to the quantities listed.

1.  Two (2) complete inmate uniforms, plus any additional clothing issued for work assignments.
2.  Six (6) pair of personal socks, 6 personal T-shirts, 6 personal underwear, three bras - females only, one thermal set.
3.  One (1) pr. sneakers, one pr. personal shoes.
4.  One (1) pr. Shorts @ ECCF
5.  Twenty(20) batteries @ ECCF
6.  Five (5) non-religious books/Magazines, two (2) newspapers.

All items which are available through the commissary and approved to be received in packages are authorized for possession. The quantities of these items are restricted to the quantities established below;

Batteries - limit 20
Condiment - from meals - limit 10
Contact Lenses w/ case - prescription only
Contact Lens Cleaning Solution
Commissary - limit one order
Denture cleaner/adhesive
Deodorant - stick - limit 3
Facial Tissue - 2
Foot Powder – limit 1
Foot Wear - Three pr total
Shoes - low quarter - limit 1 pr.( NOT AT HOLDING CENTER)
Sneakers - 2 pair (1 PAIR AT HOLDING CENTER)
Hair Care products - limit 4
Handkerchiefs - limit 3
Legal papers/mail
Library books - limit 5
Magazines/Books - limit 5
Magic Shave – Limit 1
Newspapers - limit 2

Pads (writing) - limit 4
Pen
Personal Mail - limit 20 pieces
Photographs - 5 X 7 - limit 4, Snapshots limit 30 **NO POLAROID STYLE**
Plastic bowls - limit 3
Plastic Cups - limit 2
Plastic Sporks/forks/spoons - Limit 6
Playing Cards Limit 1 deck
Package items - not exceed limits on list
Q-tips - Limit 2 boxes
Radio Headset - personal – Purchased from Commissary- <u>ONLY at ECCF</u>– limit 1
Religious Article – prayer rugs, crosses, rosary(value less than $50.00)
School books/materials as issued
Shampoo - limit 2
Shave Cream - limit 1
Shorts - 1 pair
Soap - facility issue
Soap – personal - 3 bars
Toothbrush - limit 2

10

Letter Combos *(2 stamped envelopes and 2 sheets of paper)* will be available for indigent inmates only.

a) At the Correctional Facility

   i) A list will be taken on Wednesdays in your housing area.  Your account will be checked, and if you are indigent, you will receive a combo on that Sunday.   You must sign for the items you receive.  To ensure timely delivery, you must sign up.

   ii) Indigent Hygiene items (Shampoo and Deodorant) maybe obtained every 30 days by writing an *Inmate Request Slip* to the Commissary Officer.  He will verify your indigent status and supply the items.

b) At the Holding Center,

   i) A list will be taken on Wednesdays in your housing area.  Your account will be checked, and if you are indigent, you will receive a combo on that Thursday.   You must sign for the items you receive.  To ensure timely delivery, you must sign up.

   ii) Indigent Hygiene items (Shampoo and Deodorant) may be obtained every 30 days.

> Note:   Having funds on account or having funds replenished during the week and spending all these funds prior to indigent correspondence procedures will not qualify an inmate as "*indigent*" for the purpose of receiving the free correspondence or hygiene items.

All other inmate's will have to purchase stationary, envelopes and postage via the Commissary.

There is no restriction on the amount of correspondence sent out at inmate's expense.

You will be responsible for putting your name and facility return address on each piece of correspondence.  This will enable the facility to return any undeliverable mail to you if it is returned to the facility.
All mail should be deposited in the Housing Area Mail Box, the mail will be picked up daily and posted daily.

Inmates are able to write to any person of their choice.
**All in-coming mail,** which is not considered legal or privileged correspondence, will be inspected for contraband.  This procedure consists of opening the correspondence and an inspection, mail will not be read or censored, if contraband and/or unauthorized items are found in correspondence, the item(s) will be placed in your property, you will be notified if this occurs.

Dangerous contraband discovered in any in-coming correspondence will be turned over to the proper authority for further action.  Moneys received in correspondence will be credited to your account and you will receive a receipt for the funds received.

> **NOTE:** The facility will not accept any cash, personal checks or social service checks for credit to an inmates account.

> **NOTE:** Nude personal photographs are not acceptable.  They will be returned to the sender.

> **NOTE:** If you leave a JMD facility, we will not forward your mail, It will be returned to the sender.

## PRIVILEGED CORRESPONDANCE (LEGAL MAIL)

### Defined:

*LEGAL PRIVILEGED CORRESPONDENCE. - Correspondence to or from attorneys and individuals under the direct supervision of attorneys, legal assistance agencies and individuals under the direct supervision of legal assistance agencies and courts*

*GENERAL PRIVILEGED CORRESPONDENCE - Correspondence to and from the State Commission of Correction and other Correctional Officials, Local and State and Federal law enforcement agencies, and the media*

Privileged correspondence will not be withheld or inspected. This type of correspondence will be opened by a staff member in your presence.  This is only to ensure that there is no contraband or unauthorized item(s) contained in the correspondence.

Mail and correspondence will not be withheld from any inmate unless there is prior notification and explanation from the Superintendent.  Any such seizure of mail and/or correspondence is subject to regulations established by law.

9

(1).

## <u>Affidavit In Support of Second Claim</u>

**1.)** Plaintiff on May 29, 2015 filed grievance #15G-44 re: **Denied Access to Jail's Library and/or Library prohibited in minimum to segregated keeplock unit.**

**2.)** Plaintiff had filed a number of inmate request slip(s) to: Library and, Supervisory Official(s) e.g.(sergeants) requesting reading materials as e.g. (books, magazines or newspapers etc. etc.) and, prior to filing grievance May 29, 2015. Plaintiff's inmate request slip(s) re: access to library was absolutely not act upon by jail administrator(s). **Proof by inmate request slip(s).**

**3.) On june 3, 2015 a.m. (morning) plaintiff was taken unorthodox** to duty office at Erie County Holding Center in presence of sergeant McAndrews, grievance coordinator and, sergeant Knesivic for purpose of sergeant(s) intimadating plaintiff to deter plaintiff from exhausting administrative remedies re: grievance #15G-044 <u>Denied Access to Library and/or Library Prohibited in Minimum to Segegregated Keeplock Unit.</u>

Both above-mentioned sergeant(s) on June 3, 2015 a.m. morning stated to plaintiff that " If plaintiff would sign-off on grievance #15G-044 that both sergeant(s) named herein, would agree to allow plaintiff a "book" in segregated keeplock unit".

However, plaintiff refused to sign off on grievance #15G-055. **Proof by documentation(s) of inmate request slip(s) of sergeant McAndrews, grievance coordinator above actions and, of sergeant Knesivic as well...**

**Plaintiff on June 4, 2015 at 11:00 p.m. (nite) was maliciously and vindictively transfered to Erie County Correctional Facility for plaintiff's refusal to sign off on grievance #15G-044.**

**\*\*\*4.) Plaintiff's transfered still under keeplock status but, plaintiff was allowed reading books at Erie County Correctional**

Facility from jail's library of: **old/used; incomplete books
without book covers; torn out book pages from front of book
and torn out book pages at ending of books**...disposed books
from jail library...at **Erie County Correctional Facility keeplock
unit, opposed to Erie County Holding Cenetr.** Both facilities
under the same entity and of defendant, Timothy b. Howard,
Sheriff and, County of Erie as "person".

5.) Plaintiff was allowed a christian bible in keeplock cell/unit
at Erie County Holding Center for, jail official(s) had placed
bibles in all segregated keeplock cells...

   However, plaintiff's faith/religion is "Islam"...Jail
official(s) discriminatory action(s) of placing bibles in all
keeplock cells/unit were an insult to plaintiff as muslim and,
a show that, defendant(s) sanctioned christianity oppose to
Islamic faith inmates...

   Defendant(s) were subjectively and objectively forcing
plaintiff to accept christianity faith over "Islam...There was
not "holy korans" in cells of keeplock unit nor, would jail
administration afford plaintiff a holy koran for plaintiff's
reading religious tenet(s) as with christian(s) inmates religious
tenet(s) were met by jail administration **under keeplock unit
depressive status condition(s) for all inmates...and as plaintiff
being a pre-trial detainee inmate...Plaintiff arrested March
31, 2015 and, not sentenced until June 25, 2015**...

6.) Plaintiff was not on anytime of serious medications except
motrin and, albuterol asthma inhalor(s) during incarceration
at either facility under defendant(s) Howard, Sheriff and County
of Erie as "person" and, of same entity.

6.)***Plaintiff was prejuduiced and, discriminated against at
Erie County Holding Center by jail official(s) for plaintiff
**spitting** on a deputy sheriff official their at Erie County
Holding Center which, followed plaintiff to next facility of
Erie County Correctional Facility...Plaintiff was provoked at spitting
on deputy.

(3).

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.


Dated ___10/15/15___                    ___R. Scott___

                                         Randolph Scott 15-B-2127


Sworn to before me this___15th___ day of _October___


___Rebecca Orr___
  Notary Public

REBECCA S ORR
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OR6330437
Qualified in Genesee County
My Commission Expires September 14, 2019

## Affidavit of Service

I, Randolph Scott on the 11th day of November 2015, I deposited in the U.S. mail box at Wyoming Correctional facility of:  via U.S. mail to United States District Court of Western District of New York, U.S. Courthouse, 2 Niagara Square, Bffalo, New York, c/o: Clerk:
 Papers consisting of: Prisoner Complaint Form under: The Civil Rights Act, 42 U.S.C. § 1983 re: Claim/Cause of Action, Denied Islamic Religious Worship/Exercise Service Particpation;

2.) Memorundum of Law to Support;

3.) Affidavit to Support First Claim;
4.) Affidavit In Support of "Bogus" and "Entrapment" Policy/Rule under: Religion;
6.) A second Claim/Cause of action: Denied Access to Jail Library as a Keeplock Inmate;
7.) Affidavit In Support of Second Claim.


I, Randolph Scott, declare under the penalty of perjury the foregoing is true and correct.


Dated: _____11/11_____ 2015

Randolph Scott 15-B-2127
Wyoming Correction Facility
P.O. Box 501
Attica, New York 14011-0501

_____
Notary Public

DAVID R. COLLINS
Notary Public, State of New York
No. 01CO6032969
Qualified in Orleans County
Commission Expires November 8, 2017

(1).